## MAE E. SPENCER v. ERIE RAILROAD COMPANY.

Argued June 1, 1909—Decided January 17, 1910.

1. Where in an action to recover for personal injuries the testimony of the plaintiff and her witness, showing that the accident was caused by the negligence of the defendant's employes, is directly contradicted, not only by the testimony of credible witnesses produced on behalf of the defendant, but also by written statements made and signed by the plaintiff and her witness respectively, shortly after the occurrence of the accident, a verdict in her favor should be set aside.
2. Where the damages assessed by the jury in favor of the plaintiff are awarded partly for an injury which is conclusively shown, after the verdict (by testimony taken on a rule to show cause), to have been received prior to the time of the happening of the accident which is the foundation of the suit, a new trial should be ordered.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and PARKER.

For the rule, *Collins & Corbin.*

*Contra, Eugene Emley.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff was a passenger on a train of the defendant company on May 11th, 1908, coming from Pompton Plains to North Newark. When the train stopped at the latter station she came out upon the platform of the car with a friend, Miss Mandeville. Miss Mandeville got off first, the plaintiff following her. The plaintiff's description of the accident upon the witness stand was that, just as she was about to step down from the platform of the car upon the steps, the car "suddenly lurched with a backward and forward movement," which threw her upon the station platform. The only witness who at all corroborated her in her story was Miss Mandeville. This witness does not profess to have seen the accident; on the contrary, she admits that her back was toward the plaintiff as the latter was attempting to alight. But she says that she heard "a lurching as of brakes letting off steam," and turned around just in time to see Mrs. Spencer falling down the steps. She further says that she saw no motion of the car.

On the part of the defendant the brakeman, who was standing close by at the time of the plaintiff's fall, contradicts her as to there having been any movement of the car. The engineer, the baggagemaster and the conductor also say that there was no movement of the car after the train came to a stop in the station. In addition, both the plaintiff and Miss Mandeville signed written statements concerning the accident, shortly after its occurrence, which contradict their testimony given on the witness stand. The plaintiff, in her statement, declared that she had no idea as to what caused her fall, as the train was apparently lying still as she got off; that she did not notice anything on the platform of the car that would have caused her to fall. Miss Mandeville made two written statements. In the first, she said that she was unable to state how the accident happened, and could not assign any cause for it. In her second statement she said that she saw the plaintiff lying on the ground, and that the train was then standing still; that it did not move as she came down the steps, and so, if there was any jerk or movement of the train after it

stopped, she did not feel it. In addition to her written statement the plaintiff, as it appears from the testimony of the defendant company's physician, told him, in a conversation between him and the plaintiff a few days after the accident, in response to his questions as to how it occurred, that she fell from the steps, and that was all she knew about it.

It seems to us that the testimony of the plaintiff and her friend, on the witness stand, is almost wholly discredited by their previous statements, and that, giving reasonable credit to the witnesses produced by the defendant, the preponderance of the evidence is against the plaintiff's claim. For this reason the rule should be made absolute.

There is a further reason why this course should be pursued. The injuries claimed to have been sustained by the plaintiff were largely internal. Her medical expert so testified, and stated that, owing to a displacement of the womb, and accompanying conditions, the ability of the plaintiff to bear children had been rendered, to say the least, extremely problematical. After the trial further evidence was taken by the defendant, under a rule of court allowed for the purpose, and it was then developed that before this accident the plaintiff had undergone an operation, in which the Fallopian tubes were removed; and it was uncontradicted that this operation absolutely destroyed any possibility of the plaintiff bearing children. It is contended that this testimony is not newly-discovered evidence. We think it is. The defendant had no reason to suppose that any claim for damages would be rested upon the inability of the plaintiff to bear children, and that that inability would be charged to the accident for which the defendant is claimed to be responsible. Consequently, they were not put upon inquiry before trial as to the capacity of the plaintiff to bear children at the time when the accident occurred.

The rule to show cause will be made absolute.