[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 533 
Defendant appeals his conviction for drunken driving and the ninety-day jail sentence and permanent revocation of his driver's license imposed as penalties under the mandate of R.S. 39:4-50,N.J.S.A., because this was his second conviction for violation of that statute. He also appeals from an order denying *Page 534 
him a new trial for which he had applied on the ground of newly discovered evidence.
We find it unnecessary to consider the appeal from the judgment of conviction as we think the trial court erred in denying defendant a new trial.
It appears from the statement of the case that the trial court would have acquitted the defendant except for the evidence produced by a device known as the Harger Breath Test or Drunkometer, upon which evidence the city physician predicated his testimony as to defendant's blood alcohol concentration.
Settled medical opinion apparently is that any person is unfit to drive when his blood alcohol concentration is at or in excess of fifteen-hundredths of one per cent. When the concentration is less than this, a person may or may not be unfit to drive depending upon individual characteristics and reaction to alcohol. The city physician determined defendant's concentration to be over sixteen-hundredths of one per cent. and solely on this finding, testified that defendant was unfit to drive at the time of his arrest.
The test made by the physician was not a blood analysis but a breath test. The Harger Drunkometer determines the weight of alcohol in one cubic centimeter of breath. Two thousand times this weight represents the alcohol concentration in one cubic centimeter of blood.
The Harger instrument is ingeniously contrived. Its important components are a rubber balloon and two tubes containing certain chemicals. One tube contains alcohol sensitive chemicals and the other, called an ascarite tube, contains a carbon dioxide absorbent.
The breath of the person tested is captured in the balloon by his voluntary inflation of it. The breath is released into the tubes and a color change appears in the tube sensitive to alcohol when one hundred sixty-nine thousandths of a miligram of alcohol has been absorbed by the chemicals in it. A third or control tube contains a liquid for color comparison. Simultaneously the carbon dioxide from the breath passing through the system is absorbed by the ascarite tube. The *Page 535 
weight of the absorbed carbon dioxide represents five and one-half per cent. of the weight of the breath from which the stated quantity of alcohol is absorbed. Thus the breath alcohol concentration is arrived at by simple arithmetic when the weight of the absorbed carbon dioxide is known.
The key step in the process is the determination of the weight of the absorbed carbon dioxide. This is done by weighing the ascarite tube before and after it absorbs the carbon dioxide. The difference in weight is so minute as that its detection requires the use of a scale of great sensitivity, "an analytical balance, to a very fine degree, down to a tenth of one milligram," was the testimony of the state's expert witness.
One ounce avoirdupois is the equivalent of 28,350 milligrams. A scale sensitive to one-tenth of a milligram must be capable of resolving a weight change of that part of an ounce expressed by the fraction 1 over 283,500.
The physician testified that he conducted the test in the "approved" manner. He said he used a pharmacist's scale at a local drug store, but did not otherwise describe it. He seems also to have exhibited at the trial a pamphlet of instructions outlining the Harger test and in which was a photograph of an analytical balance. His testimony was completed on May 21, 1948, at which time the trial judge reserved a ruling as to its admissibility pending the production of expert testimony on the Harger device itself. This was received July 29, 1948. The expert several times in the course of his testimony emphasized that the weights of the ascarite tube before and after absorption of the carbon dioxide must be determined "to a very accurate degree" "on an analytical balance;" "to complete this test we must have an analytical balance available," "it is not furnished as part of the (Harger) apparatus."
The defendant's counsel discovered after the judgment of conviction that the druggist's scale used by the physician was not an analytical balance but of torsion balance design. The State conceded at the oral argument on the appeal that a torsion balance was used. Its sensitivity does not appear, but it seems that commercially available pharmaceutical torsion *Page 536 
balances are not sensitive below two milligrams. See ModernLaboratory Appliances, Eimer and Amend (1942), pages 39 and 60. Such a scale is capable of resolving a weight change of only that part of an ounce which is expressed by the fraction 1 over 14,175. An analytical balance sensitive to one-tenth of a milligram has twenty times more resolving power.
Defendant promptly moved for a new trial, which was denied by the order on appeal made February 11, 1949.
Motions for new trials for newly discovered evidence are not favored and are properly entertained with caution by trial courts. But when the elements justifying a new trial clearly appear, the application should be granted. Kursheedt v. StandardBleacher Co., 77 N.J.L. 99 (Sup. Ct. 1909); Ellis v. F.L.C.Martin Automobile Co., 77 N.J.L. 339 (Sup. Ct. 1909);Dundee Manufacturing Co. v. Van Riper, 33 N.J.L. 152 (Sup.Ct. 1868); Young v. McPherson, 3 N.J.L. 455 (Sup. Ct.
1811); Spencer v. Erie Railroad Co., 79 N.J.L. 5 (Sup. Ct.
1909); Carr v. Riskin, 8 N.J. Misc. 659 (Sup. Ct. 1930); and while this court will seldom interfere with the exercise by the trial court of its discretion to grant or deny a new trial, that discretion is a judicial discretion controlled by established rules and may be abused by the denial of a new trial for newly discovered evidence when all of the essential requisites for granting a new trial for that reason exist and the injustice of the judgment is apparent. "Judicial discretion is a mere legal discretion — a discretion in discerning the course presented by the law; and what that has discerned it is the duty of the court to follow." McFeely v. Board of Pension Com'rs ofHoboken, 1 N.J. 212, at 215 (1948). Nelson v. Eastern AirLines, Inc., 128 N.J.L. 46 (E. A. 1941), relied on by the State, is not contrary. That case dealt with the scope of review of an order denying a new trial sought because of an allegedly excessive verdict, and held that the trial court should not be reversed unless the denial, on the facts appearing, is a "shock to reason and to justice," as in Martin v. Lehigh ValleyRailroad Co., 114 N.J.L. 243 (E. A. 1934). The trial court's discretion is *Page 537 
necessarily large and not readily bounded when the application is grounded on alleged excessiveness or inadequacy of verdict, but the elements which must coalesce to entitle a party to a new trial for newly discovered evidence are well known and readily defined.
These are that the new evidence (1) must be material to the issue and not merely cumulative nor impeaching nor contradictory; (2) that it has in fact been discovered since the former trial and could not have been discovered before such trial by the exercise of due diligence; and (3) that it would probably change the result if the new trial was granted. Paradise v. GreatEastern Stages, 114 N.J.L. 365 (E. A. 1934); Albrecht v.Raab, 127 N.J.L. 292 (E. A. 1941); Christie v. Petrullo,101 N.J.L. 492 (Sup. Ct. 1925); Wilkotz v. Ziss,137 N.J.L. 3 (Sup. Ct. 1948); Rooney v. Herrmann,20 N.J. Misc. 335 (Sup. Ct. 1942).
We think all the elements are present here. No extended discussion is required to establish the existence of elements (1) and (3). The pivot upon which the case turned below was the weight difference of the ascarite tube before and after the absorption of the carbon dioxide. Evidence that the weighing was done on a torsion balance would be "so persuasive as to scarcely leave it debatable" that the judgment of conviction would not have been entered by the trial judge. Compare Reid v. North Park Dodd Trust Co., 10 N.J. Misc. 469 (Sup. Ct. 1932); Millerv. Ross, 43 N.J.L. 552 (Sup. Ct. 1881).
We observe that a proceeding for violation of R.S. 39:4-50,N.J.S.A., is quasi-criminal in nature and must be so conducted as to respect and safeguard the rights of the accused. See Sharkey v. Wilkenson, 133 N.J.L. 176 (Sup. Ct. 1945).
The trial judge, however, was of the opinion that element (2) was lacking because he concluded the newly discovered evidence was of such character that reasonable diligence would have enabled the defendant to supply the same before the close of the trial. We think that defendant cannot be charged with lack of due diligence in the circumstances confronting *Page 538 
him here. The Harger test is rooted in a technology seemingly not fully understood at this time by any except the technicians who developed it and certainly having the flavor of the esoteric to the uninitiated. Even the city physician could perform it only with the aid of a training manual describing the technique and the directions for weighing. Perhaps persons trained in the use of laboratory equipment might be expected to recognize, when laymen might not, the importance of the difference in sensitivity between torsion and analytical balances; still the physician, a competent professional man, seems not to have appreciated the absolute necessity for the use of an analytical balance. That requisite became clear only when because of the trial court's own doubts as to the validity of the device, the State over two months later produced an expert from among the Indiana group who developed the Harger instrument. Are we to say that defendant at his peril should have recognized the significance of that testimony? We think not. The impression created by the physician's testimony, taken so much earlier, that he had performed the test in the "approved" manner, was that he had used an analytical balance of the type depicted in the training manual. Justice would be denied the defendant to charge him with culpable neglect on these facts. See Rules 8:7-10, 2:7-11, 1:2-20 and 3:81-13.
The order of February 11, 1949, is reversed and the case remanded for a new trial. *Page 539