59 N.J. Super. 34 (1959)
157 A.2d 44
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLI GREUL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division.
Decided December 18, 1959.
*36 Mr. Ronald F. Esposito, attorney for the defendant-appellant.
Mr. Peter L. Hughes, III, attorney for the plaintiff-respondent (Mr. David D. Furman, Attorney-General).
FULOP, J.C.C.
This is an appeal from a conviction for drunken driving in the Municipal Court of Clark Township. Defendant was operating his automobile at 80 miles per hour on the Garden State Parkway on July 12, 1959, at 2:30 A.M., weaving back and forth across two lanes. He had been at a club in Warren Township from 10:30 or 11 o'clock in the evening where he admittedly drank several glasses of rum and coke. His breath smelled of liquor, he swayed and failed several of the usual tests for sobriety. His drunkometer reading was .18 per cent. He showed emotional unbalance at the time and attempted to bribe the State troopers.
The appeal is on stenographic transcript which I have read. I have also read the briefs on both sides. I am convinced beyond any doubt that defendant was under the influence of alcohol at the time and place alleged and that his conviction was correct.
Appellant's argument may be stated in two points:
1. Aside from the drunkometer test, the State's evidence was insufficient to qualify as proof of the defendant's guilt beyond a reasonable doubt;
2. The drunkometer test results should be disregarded because no proof was offered as to the compounding of the chemicals used, the supervision of the machine, and the qualifications of the operator.
As to the first point, it is well established that medical proof is not required. The evidence of the arresting State trooper and of Trooper Burke, the drunkometer operator who also gave clinical tests, is entirely convincing. It satisfies me beyond any doubt without reference to the drunkometer reading. Defendant's evidence confirmed that defendant had *37 been drinking and carousing and that he fell asleep on the way to the police headquarters. Aside from the opinion of a drinking companion that defendant did not look drunk to him, there was nothing in defendant's favor. Defendant's proof raised no doubt.
As to the second point, heavy reliance is placed on State v. Brezina, 45 N.J. Super. 596 (Cty. Ct. 1957). The contention is that under the ruling in that case no proof of the results of a drunkometer test may be considered without an array of scientific evidence establishing the condition of the machine and the chemicals used and the qualification of the operator. The cited case has been welcomed as a boon to the bibulous and has been cited in nearly every drunken driving case since it was reported. It is obvious that the decision does not have the breadth of scope attributed to it by defense counsel.
It should be noted that in the Brezina case the testimony with respect to the use of the drunkometer was contested at every point when offered. Scientific evidence was offered for the defendant. In the present case, Trooper John R. Burke of the State Police was described as the "drunkometer man." Without objection, he testified to making the test and its results. His qualifications were not contested. He was not questioned on the operation of the machine nor upon the condition of the chemicals. Not until the State's case was rested was any objection made to the receiving of this evidence. Apparently defendant's attorney took the position that the State must prove the scientific accuracy of the test in every case whether or not there is an objection.
It should be noted that in the municipal court the defendant was represented by counsel while the State was not.
In accordance with the decision in the Brezina case, supra, the prosecution should prove that the operator of the drunkometer has been certified, that the machine was in proper working order, and that the chemicals used were in proper condition. This can be done in very brief compass unless there is an objection and cross-examination on the *38 subject. The question in this case is whether the omission of the preliminary proof requires that the evidence of the results of the test, which was admitted without objection, be excluded from consideration by the trier of facts.
It is clear that the operator of a drunkometer need not be a scientist. State v. Damoorgian, 53 N.J. Super. 108 (Cty. Ct. 1958). The State Police give a short course of instruction, and police throughout the State without scientific training learn to operate the simple device.
In the early stages of a new invention, the courts cannot take judicial notice of its functions. As the invention comes into common use and its accuracy becomes generally accepted, the court takes judicial notice thereof. Even so, the accuracy of an instrument used in a given case may be questioned. A common watch may contain a poor mechanism, or be out of order, or run down, or may be inaccurately read. But no one today would require initial proof of the nature of the mechanism, the accuracy of the springs and gears, or its condition of cleanliness or repair, or of the ability of the ordinary person to read it. No one would contend that a witness' testimony as to the reading of the time on a watch or of the speed shown on a speedometer must be disregarded without prior proof of the complex elements involved in producing the result.
See the learned exposition of the subject of judicial notice of the use of scientific devices by Mr. Justice Jacobs in State v. Dantonio, 18 N.J. 570 (1955). In that case the court also held:
"The defendant points out that there was no affirmative evidence introduced by the State to establish that the speedometers in the Troopers' cars had been recently tested. It would, perhaps, have been the better course for the State to have introduced such testimony and presumably it would have done so if the defendant had raised the point in due time before the close of the trial. However, he did not in anywise question the Troopers on the subject and made no mention of it until the testimony had been fully completed and summations were taking place. Under these circumstances the defendant is hardly in any just position to attack the accuracy of *39 the speedometers. See Penny v. Nicholas [1950], 2 K.B. 466, All Eng. 89 (1950), where the court held that a speeding conviction may be sustained on the basis of a reading of the speedometer in the police officer's car without affirmative evidence that the speedometer had recently been tested. Cf. Note, Presumption and Burden of Proof of Accuracy of Scientific and Mechanical Instruments for Measuring Speed, Temperature, Time and the Like, 21 A.L.R.2d 1200 (1952).
In the Penny case, supra, Lord Goddard, C.J., cited earlier English cases in which an officer had been permitted to testify that he had timed the defendant with a stop watch though no evidence was introduced that the watch had been tested; indeed, our courts receive evidence daily of readings on watches, scales and other measures without affirmative proof of their testing; the defendant is, of course, at liberty to attack the readings through cross-examination and otherwise and the ultimate determination is fairly left to the trier of facts. See Penny v. Nicholas, supra:
`* * * it is admissible evidence if an officer says: "I followed this man and observed from my speedometer that I was progressing at the rate of forty miles an hour. Therefore, he must have been progressing at that rate because I kept an even pace behind him." No one is saying that that is more than prima facie evidence. There may be cross-examination; there may be evidence given on the other side. The defendant may say: "That is all very well, but my own speedometer showed that I was only going at twenty-five or thirty miles an hour." Then the justices have to make up their minds between the parties, and it may be that, after seeing the witnesses and hearing their evidence, they may prefer the evidence given by the defendant to the evidence given by the police.'"
Trooper Burke is a State trooper. He was the "drunkometer man." No objection was made to the statement of his findings. In the absence of objection, he may be presumed to have been qualified and to have conducted the test in a proper manner. The drunkometer and the chemicals used therein may be presumed to have been in proper working order.
Although exceptions to the rulings of the trial court need no longer be taken, a party must make known to the trial court his objections to the action of the court at the time when the ruling or order of the court is made or sought. R.R. 3:7-8; R.R. 4:47; State v. Campisi, 42 N.J. Super. 138 (App. Div. 1957), reversed on other grounds 23 N.J. 513 (1957); Hoey v. Dell, 10 N.J. Super. 185 (App. Div. *40 1950); State v. Rhams, 14 N.J. 282 (1954); Anderson v. Modica, 4 N.J. 383 (1951).
Even if the acceptance of the testimony be deemed error, defendant is not entitled to an acquittal. He is entitled only to another trial. This was offered to defendant at the hearing in this court and rejected by defendant. He thus waived any right to relief. State v. Menke, 25 N.J. 66 (1957); State v. Lamoreaux, 20 N.J. Super. 65 (App. Div. 1952).
Defendant is guilty as charged.