74 N.J. Super. 208 (1962)
181 A.2d 30
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HENRY A. BURGER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1962.
Decided May 10, 1962.
*210 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Lewis C. Stanley argued the cause for appellant.
Mr. Edward J. Phelan, Assistant Prosecutor, argued the cause for respondent (Mr. Stanley E. Rutkowski, Mercer County Prosecutor, attorney).
The opinion of the court was delivered by LEWIS, J.A.D.
Defendant Henry A. Burger appeals from a judgment of the Mercer County Court sustaining a conviction for operating a motor vehicle while under the influence of intoxicating liquor and the imposition upon him, as a second offender, of a mandatory sentence of imprisonment for a term of three months and the forfeiture of his right to operate a motor vehicle over the highways of this State for a period of ten years. He maintains that (1) the proofs were not free of a reasonable doubt of guilt, (2) the court erred in admitting into evidence the results of a Breathalyzer examination, (3) he did not consent in writing to a chemical test, and (4) his prior conviction for a similar offense was not established by "the best evidence beyond a reasonable *211 doubt." The State's proofs included the testimony of Police Sergeant Michael G. Lisi, Patrolman Howard Sweeney and Police Surgeon Dr. Mark H. Lund.
Lisi testified that on May 14, 1960, at about 10 P.M., he was riding in a patrol car driven by Sweeney, which was proceeding in a westerly direction on Nassau Road nearing the intersection of Scott Lane, in the Township of Princeton, when he observed the defendant operating an automobile "coming in an easterly direction and veer sharply into the path of the police car on our side of the road." The patrol vehicle pulled over to the extreme right, backed up, turned around and then followed the Burger car until it "came to a halt in a driveway of a residence on the Princeton-Kingston Road," approximately a mile from where it had been first observed. While in pursuit, Lisi observed that defendant's automobile "kept veering sharply to the right and to the left. At times it was completely over the white line on the left side of the road." He stated that they were unable to stop Burger because of his "erratic driving" and the traffic in both directions at that hour of the night. The police pulled in behind the parked Burger car, walked to the driver's side of that vehicle, and found Burger lying on the front seat; the headlights of his car had been turned off, but the motor was still operating. Lisi "shut off the motor." Defendant was asked to step out of the car, and as he did so "staggered backwards and fell against the car"; he readily admitted that he had been drinking. The sergeant detected "a strong smell of alcohol." Lisi suggested that Burger voluntarily submit to a "Breathalyzer test," which at first he declined to do, but he subsequently gave consent. He was then taken to the Princeton Hospital and Dr. Lund was summoned. The doctor arrived approximately a half-hour after the call. Defendant, during this interim period, was in the custody of Lisi who testified that Burger's face was flushed  "His eyes looked liked they were pretty badly bloodshot and half closed"  and described his speech as "mumbling language * * * you couldn't understand *212 what he was saying, he talked continuously." Lisi was unequivocal in his opinion that Burger was intoxicated and was not fit to operate a motor vehicle. The testimony of Patrolman Sweeney substantiated that given by the sergeant.
The police surgeon gave evidence respecting his clinical observations, the physical experiments and the test with the Breathalyzer equipment. The doctor testified that defendant told him "he had been drinking beer that afternoon * * *. Three or four, he said." The defendant's physical condition was explained  his face was "slightly flushed"; eyes were "slightly bloodshot"; "he had an alcoholic breath, faint, * * * but certainly it was apparent"; speech was "rational but he did ramble, he kept talking along"; "swayed noticably [sic]"; there was a "fair execution" of the "finger and nose" dexterity test; his clothing was "fairly neat" and he was polite. When interrogated as to whether he had formed a conclusion as to Burger's sobriety based upon his observations and physical tests, he opined: "Well, I thought in view of the fact that he had swayed quite a bit while he walked and was rambling on, that he was under the influence of alcohol to the extent that it would be unwise for him to operate a motor vehicle car." Subsequent testimony concerning the Breathalyzer test was offered and received by the court; it included the result-readings, which indicated ".22 blood alcohol."
Defendant took the witness stand on his own behalf and admitted that he had been drinking beer on the afternoon of the day of his apprehension, testifying: "I'd say average of maybe one every half hour, three-quarters of an hour. * * * most part of the afternoon." His admission under cross-examination is pertinent:
"Q. The doctor asked you how many you had been drinking too, didn't he?
A. He did.
Q. That's when you told him you had three or four?
A. Offhand I said three or four.
*213 Q. Could it have been more?
A. It could have been maybe five or six. I'm not saying it was exactly three or four."
Burger said that after spending the afternoon in a saloon he drove home from the center of town about 6 o'clock, returned into town (driving) approximately 7:15 P.M., had dinner at the "Grotto" where they do not sell alcoholic beverages, and left the restaurant for home shortly after 9 o'clock. He claimed that his driveway was under repair so he had to use his neighbor's; when he parked he turned off both the motor and the headlights; the officers called to him from across the road; that he walked over to them and upon leaving the car he stumbled into a drainage ditch. It is significant that defendant at no time denied under oath that he was intoxicated or that he had been driving on the public highway in the manner alleged.
The trial judge, in rendering an oral opinion, analytically reviewed the testimony adduced at the de novo hearing and found as a matter of fact that there was more than sufficient proof beyond a reasonable doubt of the defendant's guilt of operating a motor vehicle while under the influence of intoxicating liquor. He specifically stated:
"Now, absent any proof as to the result of the Breathalyzer I feel there is sufficient evidence to sustain the conviction of this defendant."
In the discharge of our function as a reviewing tribunal, we have examined the record and determine without hesitancy that there is adequate evidence to support the trial court's judgment. See State v. Emery, 27 N.J. 348, 353 (1958). In reaching this conclusion we are mindful of the admonition that a prosecution for driving under the influence of intoxicating liquor "falls into the somewhat amorphous category of a quasi-criminal proceeding," and that an alleged statutory infraction must be proved beyond a reasonable doubt. Ibid. The credibility of the testimony *214 is for the trial court to assess. State v. Zelinski, 33 N.J. 561, 567 (1960). Intoxication may be established by lay evidence. State v. Ingram, 67 N.J. Super. 21, 37 (Cty. Ct. 1961); State v. Pichadou, 34 N.J. Super. 177, 180-181 (App. Div. 1955). As said in Emery above (at p. 355), the State need only prove that the accused "has imbibed to the extent that his physical coordination or mental faculties are deleteriously affected." Burger's admissions, the testimony of the police officers and the clinical observations of the examining physician abundantly pronounced the insobriety of the defendant and established his guilt as charged, without any consideration or weight being attributed to the disputed corroborating chemical test.
Accordingly, it is unnecessary to deliberate upon the technical qualifications of the police surgeon who administered the Breathalyzer examination or upon the factual details of the alleged inadequacies of a proper foundation upon which to predicate the admissibility of its results. Note, State v. Miller, 64 N.J. Super. 262 (App. Div. 1960); State v. Greul, 59 N.J. Super. 34 (Cty. Ct. 1959); State v. Damoorgian, 53 N.J. Super. 108 (Cty. Ct. 1958); State v. Brezina, 45 N.J. Super. 596 (Cty. Ct. 1957); State v. Hunter, 4 N.J. Super. 531 (App. Div. 1949). See also Brooks, "Evidence" ("Scientific Evidence: Use of the Harger Drunkometer"), 14 Rutgers L. Rev. 390, 404-407 (1960); Richardson, Modern Scientific Evidence, "Intoxication Tests," sec. 13.8, p. 357 (1961).
Although the question of "consent" in this case is now moot, the issue was vigorously argued on appeal and we digress to point out that the legislative caveat, incorporated in N.J.S.A. 39:4-50.1, that: "No chemical analysis, as provided in this section, or specimen necessary thereto, may be made or taken unless expressly consented to, or requested by, the defendant," does not require that such consent be in writing. The proofs indicate that defendant freely consented and willingly submitted to the Breathalyzer test administered by Dr. Lund. The voluntariness of such *215 consent was not denied by Burger during the trial of his cause.
Defendant challenges the propriety of the trial court's imposing a sentence on him as a second offender; he contends that his prior conviction was not established "by the best evidence beyond a reasonable doubt." Upon the completion of the trial under review, the prosecutor moved for an opportunity to cause a presentence investigation to be made. The matter was adjourned from a Friday to the following Monday at 9:30 A.M. "to give the State opportunity to produce any evidence of a previous conviction." At the appointed time there was submitted to the court a certified copy of a report from the Motor Vehicle Division, Form No. SR 9763, dated June 5, 1961, under the hand and seal of Ned J. Parsekian, Acting Director, which disclosed that one Henry A. Burger (listing his current and former addresses) had previously (February 25, 1937) been convicted for the violation of driving while under the influence of liquor and had been fined $200 with the revocation of his license on February 27, 1937  restored March 30, 1940. This report was shown to defendant's attorney. Neither the defendant, who was personally present before the court, nor his counsel denied the identity of the person or questioned the prior conviction record as set forth in the report. In response to the statment by the trial judge:
"Now, if counsel at this time wants to indicate that this evidence is not correct and wants the opportunity to refute it, of course the court is always open. We will withhold sentence until such opportunity is presented counsel. I suppose that is always available to counsel."
counsel argued that it was not incumbent upon the defense to disprove an inadequate case, that the document itself was not the best evidence of a conviction. The trial court disagreed, and imposed the mandatory penalty applicable to second offenders as provided by N.J.S.A. 39:4-50. It is *216 urged that the second-offense provisions of this statute should be as strictly construed as in the ordinary criminal case. Reliance is placed upon State v. Laird, 25 N.J. 298 (1957), but the facts in that case are clearly distinguishable, and the sound protective principles of law therein enunciated do not support the arguments that the records of the Division of Motor Vehicles are insufficient to establish a prior violation of the Motor Vehicle Act. In that case Justice Heher, speaking for the Supreme Court, said at page 304:
"Here, the statute itself, section 39:4-50, provides that one who has been convicted of a previous violation of the section need not be charged as a second offender in the complaint in order to render him liable to the punishment laid down for a second offense. Nevertheless, it is a basic principle of procedural jurisprudence that the accused be given, before sentence as for a second offense, notice and an opportunity to be heard as to the commission of the prior offense made a precondition to the greater punishment provided for its repetition."
Laird stands for the proposition that there must be adequate inquiry and opportunity to be heard before the imposition of sentence. Such was accorded Burger. It was not necessary to try defendant for the former offense. A prior conviction record is only a factor to be considered in determining the degree of punishment. See State v. Rowe, 116 N.J.L. 48, 51, 52 (Sup. Ct. 1935), affirmed per curiam 122 N.J.L. 466 (E. & A. 1939).
This court in State v. Hanson, 59 N.J. Super. 434, 444 (App. Div. 1960), certif. denied 32 N.J. 351 (1960), observed that judges ordinarily do not proceed with the sentencing of a defendant found guilty of a violation where a mandatory higher penalty for subsequent offenses is prescribed until they have received a written record showing the defendant's prior convictions, if any, and that "such written record is obtained from the Division of Motor Vehicles." By statute, N.J.S.A. 39:5-42, every judge and magistrate is required within three days to make a written report to the Commissioner (now Director) of Motor Vehicles of all convictions of motor vehicle violations and *217 crimes in which a motor vehicle was used. The Division is the central and official agency for keeping such records; it is the statutory reservoir for a state-wide compilation of such violations. Moreover, the records, reports, documents and papers of the municipal courts are subject to destruction according to schedules approved by the Administrative Director of the Courts. R.R. 8:13-10(c). See also Municipal Court Manual (rev. 1960), c. 8, sec. 12, p. 55, and schedule p. 89. We hold that the exhibit of the Acting Director of Motor Vehicles, certifying the violation record of the defendant, was competent, admissible evidence within the contemplation of our statutes and court rules.
Defendant's prior offense occurred over 24 years ago. The wisdom of imposing a limitation on the use of a prior conviction as old as the one in the instant case, in determining the penalty for a repetitious offense, is a matter of legislative policy. The trial court was obliged under the circumstances to enforce the mandatory sentence as expressed in N.J.S.A. 39:4-50, and it is not within the province of this court to determine otherwise.
Affirmed.