21 N.J. Super. 469 (1952)
91 A.2d 412
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH ASH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 22, 1952.
Decided October 1, 1952.
*470 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. Edward Schoen, Jr., Legal Assistant Prosecutor of Essex County, argued the cause for the respondent (Mr. Edward Gaulkin, Prosecutor, attorney).
Mr. Joseph Weintraub argued the cause for the appellant (Mr. Nathan Cholodenko, attorney).
The opinion of the court was delivered by SMALLEY, J.S.C.
Defendant was found guilty of operating a motor vehicle while under the influence of intoxicating liquor, in violation of R.S. 39:4-50, after a trial de novo before the Essex County Court on appeal from the Municipal Court of the Town of Bloomfield. He was sentenced as a second offender to the county jail for a period of three months and his driver's license permanently revoked. Defendant now appeals to this court from the Essex County Court's judgment of conviction.
About 3 A.M. on November 16, 1951 defendant was observed by a police officer on Bloomfield Avenue in the Town of Bloomfield. The officer's attention was attracted by the defendant's swaying and the abnormal way in which he was walking. There is no doubt that the police officer was in *471 conversation with the defendant. There is some dispute, however, as to whether certain conversations took place in a diner or whether they took place outside on the street. Be that as it may, there is no question that the police officer advised the defendant, after talking with him, not to operate his automobile, stating that he did not think the defendant was fit to operate his vehicle due to the fact that the defendant had been drinking. Notwithstanding the police officer's admonition, defendant did start up and drive his automobile. The officer then stopped the defendant and asked for the usual information, such as driver's license and automobile registration.
The officer testified that the defendant staggered, "that he did not maneuver too well," that his cheeks were rosy, that his eyes appeared cloudy, that his hat was tilted on the back of his head, and that defendant dropped part of the contents of his wallet on the street when asked to produce his driver's license. Defendant was taken to the Bloomfield police headquarters where he was examined by Dr. Galioto, a licensed physician, who testified that he had been police surgeon of the Town of Bloomfield for 16 years and that he made the examination at approximately 3:30 A.M. on November 16, 1951.
Dr. Galioto testified that the defendant staggered and swayed, that his face was flushed, that his eyes were injected, that his pupils were mid-dilated, that his speech was thick, that the defendant failed to pass the test of touching his nose with his finger when his eyes were closed, that when his eyes were shut and hands outstretched he swayed considerably, that he failed in the test of walking a white line to test his equilibrium, and that the defendant admitted that he had been drinking Scotch, stating that he had partaken of "many or quite a few." The doctor admitted that the defendant had passed the coin test in that he had picked up a coin which was dropped to the floor by the doctor fairly well. No blood test was performed because, as the doctor explained, the defendant admitted that he had been drinking.
*472 On cross-examination the doctor admitted that there was no impairment of defendant's mental faculties and that the defendant's demeanor was calm and that he was thoroughly cooperative. The doctor further testified that his opinion as to the influence of alcohol was based solely upon the physical manifestations of muscular coordination and that he found no impairment of mental faculties.
Several police officers, in addition to the arresting officer, testified that the defendant swayed, that the defendant admitted drinking "several Scotches," that there was a smell of alcohol on the defendant's breath, and that he staggered when in police headquarters.
Defendant testified that he had been drinking. He had first been to his nephew's birthday party (a 12-year-old boy) where no liquor had been served and then that he, in the company of friends, went to a Thanksgiving party at the Topper's Club and there had three drinks. It is defendant's contention that he was not under the influence of intoxicating liquor, that he had been up 18 hours, that it is normal for his speech to be thick and that he suffers from a heart ailment. He maintains that these factors account for his appearance as described by the State's witnesses.
Dr. Oscar R. Deutel testified that he had been practicing for 20 years and that he was the defendant's family physician, that the defendant suffered a coronary condition in 1940 and that the condition is chronic. He further testified that unless there is an impairment of mental faculties there cannot be any influence of intoxicating liquor and that the lack of coordination described could be due to 20 or 30 causes.
Dr. Smoger, an interne at the Mountainside Hospital in Montclair, who is indirectly related to the defendant and who was present at the birthday party for the nephew, testified that he came to police headquarters in Bloomfield about 5 A.M., and while he admitted that he did not subject the defendant to the tests conducted by Dr. Galioto, he was *473 unable to ascertain how the police surgeon could have pronounced the defendant under the influence of intoxicating liquor.
Several witnesses testified for the defendant who had been in his company when he was at the Topper's Club, that the defendant did not appear to be under the influence of intoxicating liquor. It must be noted that these witnesses testified only to the defendant's condition as it appeared to them at about 1:30 A.M., and not as to the defendant's condition at the time he was apprehended and examined, which was between 3 and 3:30 A.M.
It is the defendant's contention that the verdict was against the weight of the evidence and, further, that there can be no conviction for driving under the influence of intoxicating liquor where the State's case affirmatively shows that there was no impairment of mental faculties.
Defendant relies heavily on State v. Rodgers, 91 N.J.L. 212, 215 (E. & A. 1917), and contends that the State in order to obtain a conviction for driving a motor vehicle while under the influence of intoxicating liquor within the meaning of R.S. 39:4-50 must prove that there was both an impairment of mental and physical faculties and that failing in this proof the conviction was erroneous in law and must be set aside.
R.S. 39:4-50 provides:
"A person who operates a motor vehicle while under the influence of intoxicating liquor or a narcotic or habit producing drug, or permits another person who is under the influence of intoxicating liquor or a narcotic or habit producing drug to operate a motor vehicle owned by him or in his custody or control, shall be subject, for a first offense, to a fine of not less than two hundred nor more than five hundred dollars, or imprisonment for a term of not less than thirty days nor more than three months, or both, in the discretion of the magistrate, and shall forthwith forfeit his right to operate a motor vehicle over the highways of this state for a period of two years from the date of his conviction. For a subsequent violation, he shall be imprisoned for a term of three months and shall forfeit his right to thereafter operate a motor vehicle over the highways of this state. * * *"
*474 State v. Rodgers, supra, involved a disorderly person charge and the following statement was made in distinguishing that offense from an indictable nuisance (p. 215):
"It will be noticed that it is not essential to the existence of the statutory offense that the driver of the automobile should be so intoxicated that he cannot safely drive a car. The expression `under the influence of intoxicating liquor' covers not only all the well-known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors and which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess." ("safely" italicized by court.)
We italicize the words "or" and "and."
Defendant seized upon this single statement from a single case in this State as his authority for his contention of conjunctive requirement. He does, however, cite authority in other jurisdictions.
In State v. Reifsteck, 317 No. 268, 295 S.W. 741 (Sup. Ct. 1927), the court said at p. 742:
"However, the words `intoxicated condition' are of common, every day use, having a well defined and well understood meaning. Everyone knows that the words refer to the impaired condition of thought and action and the loss of the normal control of one's faculties, caused by imbibing vinous, malt or spirituous liquors."
See State v. Storrs, 105 Vt. 180, 163 A. 560 (Sup. Ct. 1933). The State cites numerous authorities to the contrary.
In State v. Andrews, 108 Conn. 209, 142 A. 840 (Conn. Sup. Ct. Err. 1928), at p. 842, that court states as follows:
"Also without merit is the claim of error in the charge upon the law concerning driving under the influence of liquor. The charge contains a full and careful statement of our law upon this feature of the case. Under the provisions of our statute, this offense is established when the evidence shows that the driver of an automobile, by reason of having drunk intoxicating liquor, had become so affected in his mental, physical, or nervous processes that he lacked to an appreciable degree the ability to function properly in relation to the operation of the machine."
See cases collected in 142 A.L.R. 560.
*475 We cannot accept the theory advanced by the defendant that the court in State v. Rodgers, supra, laid down the rule that when one so charged, as here, has his mental faculties unimpaired, yet is lacking in physical control or coordination of his body brought about by the drinking of intoxicating liquor, he may still with impunity operate his automobile on the highways of this State. We think the words "which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess" are not restricted in their meaning to a lack of coordination of the body and, in addition thereto, an impairment of mental faculties, but rather to a lack of control brought about by the drinking of intoxicating liquor to the extent that he cannot control himself due to an impairment of either his mental faculties or physical capabilities.
Assuming, but not conceding that we do not clearly interpret the court's meaning, we point out that the rule as urged by the defendant is not the law of the Rodgers case. The defendant takes the statement on which he relies out of the context of the entire opinion and maintains that by these words the Court of Errors and Appeals established a criterion for the quantum of proof necessary for a conviction under the statute. The defendant is in error when he makes this contention, in that he is not citing law but merely obiter dictum, since that issue was not involved on the appeal.
The court was merely stating that a violation of the statute in question was not a nuisance indictable at common law. The definition given of the expression "under the influence of intoxicating liquors" was an incidental matter which did not relate to the facts of the specific case sub judice and consequently was only dictum.
We are unable to conclude that it was the intention of the Legislature, or the conclusion of the court, that the State should be burdened with the double prong of proof as urged by the defendant.
Defendant finally argues that there was no evidence to support the judgment of conviction. We find otherwise. *476 The issue presented to the trier of the facts was whether the defendant had operated his vehicle while under the influence of intoxicating liquor. It was a factual question and the court below determined that the defendant did in fact so operate his vehicle in violation of the statute. We find that the evidence fully supports the result reached by the County Court. There is no justification for disturbing its findings.
The judgment of conviction is affirmed.