STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. EDWARD EMERY, DEFENDANT-APPELLANT (TWO CASES).

Argued May 5, 1958—Decided June 16, 1958.

*Mr. Louis Winer* argued the cause for appellant (*Mr. Benjamin Yanowsky,* attorney).

*Mr. Bertram Polow* argued the cause for the State (*Mr. Frank C. Scerbo,* Morris County Prosecutor, attorney; *Mr. Stephen B. Wiley,* on the brief).

The opinion of the court was delivered by

WACHENFELD, J. The Appellate Division affirmed two judgments of conviction entered against defendant in the Morris County Court, and we granted his petition for certification. Both convictions arise out of the circumstances attending an automobile accident in which defendant was involved. The judgments are admittedly based on mutually inconsistent findings of fact.

On the evening of March 3, 1956 Edward Emery attended a party in the company of his brother, John, and a friend, Eugene Wolf. Shortly before 11:00 P. M. the three boys

left the party to, according to Edward's testimony, drive to a diner for some coffee.

At approximately 11:05 P. M. the automobile in which they were traveling struck two pedestrians who were walking along Mountain Lakes Boulevard in the Borough of Mountain Lakes. One of the pedestrians was killed. All of the occupants of the car stated to the investigating police that Edward Emery had been driving when the accident occurred.

On March 17, 1956 Edward, John and Eugene retracted their original stories and informed a state motor vehicle inspector that, in fact, John Emery had been the driver of the vehicle at the time of the accident. Thenceforth, they steadfastly adhered to this version. Nevertheless, Edward was charged with violating the Motor Vehicle Act, *R. S.* 39:4–50, by driving, on the occasion in question, while under the influence of intoxicating liquor, and he was convicted of this infraction in the Mountain Lakes Municipal Court on May 9, 1956. He immediately filed a notice of appeal to the County Court.

Before Edward's appeal was heard, the Morris County grand jury, on October 11, 1956, returned an indictment charging, in the first count, him, John and Eugene with conspiring to obstruct justice by falsely stating that Edward had been the driver of the automobile and, in the second count, charging the same three with the formulation of a conspiracy to obstruct justice by falsely stating John had been the driver. An indictment was also handed down against Edward for causing death by careless driving.

On October 19, 1956, after trial *de novo* on the record, the Morris County Court confirmed Edward's conviction in the municipal court of driving while under the influence of intoxicating liquor, and Edward subsequently appealed to the Appellate Division.

Eugene Wolf and Edward were brought to trial on the conspiracy indictment on December 3, 1956. John was not tried since he was under the age of 18 years. On December 5, 1956 a jury, sitting in the Morris County Court, found Edward and Eugene guilty of conspiring to obstruct justice

by falsely stating that Edward had been driving the automobile when the accident took place. Edward and Eugene were acquitted on the second count of the indictment. Thus, at this point in the various proceedings, the County Court had convicted Edward of driving while under the influence and the jury had convicted him for agreeing to state untruthfully that he was the driver of the car—two wholly inconsistent factual determinations.

Edward did not appeal from the conspiracy conviction until the prosecutor brought its existence to the attention of the Appellate Division on the appeal of · the drunken driving conviction. The Appellate Division then suggested the former judgment be brought up for simultaneous review with the latter, and this was done. Although invited to do so by the lower appellate tribunal, defendant declined to argue that the second conviction was invalid on the grounds of *res adjudicata* or collateral estoppel. The Appellate Division did not discern any merit in the contentions actually advanced by defendant and, accordingly, it affirmed both convictions, saying:

"We have carefully examined the points of appeal urged in the brief and argument on the appeal from the conviction on the conspiracy indictment, and, for reasons which we shall set forth, find no merit in any of them. The one substantial basis for an argument for reversal, that the verdict upon which judgment of conviction was entered was barred on principles of *res judicata* arising from the contrary determination of fact implicit in the statutory conviction, is beyond our purview, because the defendant deliberately declined to make the point, although specifically invited by the court to do so at and prior to the oral argument. In the interests of avoiding an injustice the court was willing to overlook the fact that the plea was not made at the trial, see *State v. Meyers*, 9 *N. J. Misc.* 1174 (*Sup. Ct.* 1931), affirmed 110 *N. J. L.* 527 (*E. & A.* 1933). We cannot, however, base a determination of an appeal on a ground which is not only properly objected to by the State because not urged at the trial but is expressly disclaimed by the appellant. These observations in no way imply any settled opinion on the merits of the matter of *res judicata.* * * *"

Defendant urges various reasons why the "drunken driving" conviction should be set aside as illegal, and we will consider them in the order in which they are advanced.

## The First Conviction

It is initially asserted the State failed to produce sufficient evidence to prove the essential elements of a violation of *R. S.* 39:4–50.

■■ A prosecution for driving while under the influence of intoxicating liquor falls into the somewhat amorphous category of a *quasi*-criminal proceeding. *State v. McCarthy,* 30 *N. J. Super.* 6 (*App. Div.* 1954); *State v. Rowe,* 116 *N. J. L.* 48 (*Sup. Ct.* 1935), affirmed *p. c.* 122 *N. J. L.* 466 (*E. & A.* 1939). An infraction of the statute must be proved beyond a reasonable doubt. *State v. Batz,* 34 *N. J. Super.* 172 (*App. Div.*), certification denied 18 *N. J.* 279 (1955); *State v. Matchok,* 14 *N. J. Super.* 359 (*App. Div.* 1951).

■ It is not our function in reviewing the conviction in question to weigh the evidence anew and to make independent findings of fact as if we were sitting in first judgment on the case. Rather, our obligation is to determine whether there is adequate evidence to support the judgment rendered below. *State v. Dantonio,* 18 *N. J.* 570 (1955); *State v. Meyers,* 136 *N. J. L.* 288 (*Sup. Ct.* 1947); *State v. Rowe, supra.*

■ Defendant maintains that the State failed to prove beyond a reasonable doubt that he was the driver of the automobile involved. It is significant, however, that this contention is not actually predicated upon any alleged deficiencies in the State's case but, instead, upon the fact that at the trial Edward, John and Eugene all testified on behalf of the defense that John had been driving. They stated that, pursuant to an agreement made during the few hectic moments following the accident, they had originally lied in order to protect John, who did not have a license and had previously been in difficulty with the authorities for driving without one.

There was, however, ample evidence to support the magistrate's finding, subsequently confirmed by the County Court, that Edward was the driver and not John.

The police officers who had gone to the scene of the accident related Edward's admissions to them that he had been driving, and the State introduced Edward's signed statement to the same effect. The prior inconsistent statements of John and Eugene that Edward was the driver were also the subject of testimony. Additionally, two of the officers described Edward's reactions when he received the news at police headquarters that one of the pedestrians had died. They stated Edward jumped from his chair, exclaiming, "Oh, my God, I killed a man," and, when they tried to calm him, "You can tell me to take it easy, I killed a man." He said further: "It's bad enough I don't have the money to pay for the drunken driving. If I go to jail my wife will have to go on relief and who is going to take care of my baby."

In light of their prior statements and demeanor, the magistrate was certainly not compelled to accept the story given by Edward, John and Eugene at the trial as true. It is as plausible to suppose the trial testimony was fabricated in order to protect Edward as it is to conclude the earlier statements were contrived to shelter John. Edward was an adult with a family to support and an indictment for causing death by reckless driving pending against him, while John had no such responsibilities and could only be proceeded against as a juvenile delinquent. Especially influential as bearing upon the true identity of the driver of the car are Edward's agitated remarks in response to the information that a man had been killed.

Defendant asserts, however, that there is other evidence, aside from the testimony of the three boys, which conclusively vindicates his contention that John was the driver rather than himself.

According to their testimony at the trial, all three occupants of the automobile were sitting in the front seat when the accident occurred. Wolf, who was farthest away from the driver, pitched forward and shattered the windshield with his arms. He was cut rather badly and required hospitalization. The right side of Edward Emery's face was also lacerated. John did not sustain any injuries.

If the unimpeachable evidence of the physical results of the accident entirely refuted the State's contention that Edward was the driver, we should, of course, be obligated to order a reversal. But does the injury to Edward's right cheek, regarded in the light of John's lack of injuries, incontrovertibly demonstrate that Edward was sitting next to Wolf when the accident occurred?

Certainly, it is not scientifically incredible that when a windshield is fractured on the side away from the wheel, the driver should be struck by flying glass while a passenger in the middle of the front seat escapes uninjured. The fragments naturally pursue an aberrant course, and it is entirely possible that John was thrown beneath the dashboard while Edward remained upright, pressed against the steering wheel. The existence, or lack, of cuts and their location bears upon the issue of who was driving, but it is by no means conclusive.

On the entire record, we conclude the magistrate was entitled to find that it had been proved beyond a reasonable doubt that Edward was driving the car at the time of the accident and, *a fortiori,* the County Court's affirmatory conviction was justified.

Defendant, urges, however, that the State's case failed upon the crucial issue of intoxication.

*R. S.* 39:4–50 penalizes a person who drives "while under the influence of intoxicating liquor." Although prosecutions pursuant to its provisions are commonly and colloquially termed "drunken driving cases," it is settled that the statute does not require as a prerequisite to conviction that the accused be absolutely "drunk," in the sense of being sodden with alcohol. It is sufficient if the presumed offender has imbibed to the extent that his physical coordination or mental faculties are deleteriously affected. *State v. Rodgers,* 91 *N. J. L.* 212 (*E. & A.* 1917); *State v. Ash,* 21 *N. J. Super.* 469 (*App. Div.* 1952); *State v. Glynn,* 20 *N. J. Super.* 20 (*App. Div.* 1952).

Keeping this criterion in mind, it is apparent there was more than an adequate factual basis for a finding that

Edward had contravened the statute on the occasion in question. The record is replete with direct and circumstantial evidence justifying the result reached.

We find no merit in defendant's contentions that his first conviction was clearly against the weight of the evidence.

■ *R. R.* 3 :10–10(*a*) provides that appeals to the County Court shall take the form of a trial *de novo* on the record where, as here, a transcript has been taken of the proceedings in the municipal court.

Prior to the hearing of the County Court appeal, defendant served notice that he would seek to introduce into evidence the conspiracy indictment, which had not yet been tried, and the results of certain lie detector tests which had been conducted by the State Police, subsequent to defendant's conviction by the magistrate, at the request of the Morris County prosecutor. These tests were administered on June 5, 7 and 11, 1956 to Edward, John and Eugene, and from the polygrams of John and Eugene the examiner concluded that John Emery had been the driver of the automobile. Edward's polygram was "distorted" and the examiner reached no opinion respecting it. The County Court judge refused to admit the results of the tests into evidence, and defendant apparently did not offer the conspiracy indictment.

Passing the issue of whether the County Court judge had power to admit evidence *dehors* the record, his discretion to make the rulings in question was clearly not abused.

The testimony of the state trooper who had given the polygraph examinations to Edward, John and Eugene was offered upon the ground that it constituted newly discovered evidence. In fact, the results of the lie detector tests were not "newly discovered."

Polygraph examinations are not infallible tests of truth or deception. They must be interpreted in order to have any meaning. It is conceded that their probative value hinges upon the competence of the expert who administers and reads them. *McCormick, Evidence,* § 174 (1954). Therefore, the trooper's testimony would not have been conclusive upon the issue of who was driving the car, but merely one

factor to have been considered in arriving at a finding as to the identity ·of the driver. Regarded in this light, the results of the tests were cumulative of the testimony given at the trial that John was the driver. "Newly discovered" evidence is not admissible if merely cumulative in nature. *State v. Vaszorich,* 13 *N. J.* 99, certification denied 346 *U. S.* 900, 74 *S. Ct.* 219, 98 *L. Ed.* 400 (1953); *Foster v. Medela,* 9 *N. J. Super.* 195 (*App. Div.* 1950); *State v. Hunter,* 4 *N. J. Super.* 531 (*App. Div.* 1949); *State v. Weleck,* 34 *N. J. Super.* 267 (*Cty. Ct.* 1955)

Furthermore, these tests could have been procured before or during the trial in the magistrate's court instead of one month thereafter. Defendant insists he was foreclosed from obtaining the tests at an earlier date by the prosecutor's initial refusal to consent to their administration. This did not prevent him, however, from enlisting the aid of a private expert.

Since, by the exercise of due diligence, the evidence in question could have been discovered before the trial in the municipal court, it is not newly discovered evidence within the legal definition thereof. *State v. Vaszorich, supra; State v. Hunter, supra.*

Even when they are the subject of proper and timely offer, many jurisdictions have excluded the results of lie detector tests on the ground that they have but a low degree of scientific accuracy and reliability. See *McCormick, supra.* By our disposition of defendant's contentions regarding the tests *sub judice,* we do not intend to intimate any opinion as to the general admissibility of the results of polygraph examinations.

Turning to the question of the conspiracy indictment as bearing upon defendant's innocence of the "drunken driving" charge, it is sufficient to say that no attempt was made at the County Court level to introduce such indictment into evidence. Furthermore, aside from its not being part of the record compiled in the municipal court, it was absolutely devoid of probative value.

Defendant's remaining challenges to the validity of the first conviction have no merit, and we will not discuss them specifically. We conclude that the conviction of driving while under the influence of intoxicating liquor must be affirmed.

## THE SECOND CONVICTION

The defendant alleges the indictment charging him with conspiring to obstruct justice was fatally defective in various respects and that the trial judge wrongfully removed one of his prime defenses from the consideration of the jury.

The validity of these contentions need not be decided since we have determined to reverse the second conviction upon another and wholly unrelated ground.

In the Appellate Division the defendant specifically refused to impugn the second conviction upon the theory that its obtention should have been barred by the application of *res adjudicata* or collateral estoppel. Now, however, he urges there was error in the Appellate Division's not acting on its own motion to set the conviction aside.

Apparently the defendant's reluctance to accept the suggestion made below that he argue "principles of *res judicata*" was traceable to the thought that such acceptance would necessarily have entailed the recognition on his part of the validity of the first judgment. This is not so. The defendant's "dilemma" was illusory and self-imposed. Alternative arguments would have been in order in the Appellate Division.

The State contends the defendant should not be permitted to invoke the doctrine of collateral estoppel as invalidating the second conviction since he not only failed to raise this issue at the trial level but expressly disclaimed any intention of doing so even in the Appellate Division.

The factual inconsistencies of the two judgments make it apparent that an injustice has been done by the rendition of one of them. The defendant has been convicted of two offenses on findings of fact which are utterly irreconcilable. With knowledge of the conflict between the two stories con-

cerning the identity of the driver, the State chose to prosecute the drunken driving charge upon the thesis that Edward had been driving. In these circumstances, the preservation of the integrity of the courts and the proper and equitable administration of criminal justice require that the matter of inconsistency be resolved under the plain error rule. See *City of Newark v. Pulverman,* 12 *N. J.* 105, 108 (1953). If the illegality of a conviction is apparent, the defendant's protestations, although belated, must be observed.

 Because of his prior conviction in the municipal and County Courts of driving while under the influence of intoxicating liquor, the State was collaterally estopped from convicting the defendant for conspiring to state falsely he was the driver of the automobile on the occasion in question. The doctrine of collateral estoppel, under these circumstances, precludes the relitigation between the same parties of the identical factual question previously tried between them, where it is isolated and determinative of the basic factual issue involved. *Restatement, Judgments,* § 68. See *Mazzilli v. Accident & Casualty Ins. Co.,* 26 *N. J.* 307 (1958). It applies in criminal as well as in civil cases. *State v. Leibowitz,* 22 *N. J.* 102 (1956); *State v. Hoag,* 21 *N. J.* 496 (1956), affirmed 78 *S. Ct.* 829 (1958).

The identity of the driver of the car was an ultimate fact directly in issue in the magistrate's court, and the judgment there depended upon the finding that Edward was the driver, *cf. Mazzilli v. Accident & Casualty Ins. Co., supra,* while the success of the conspiracy prosecution depended upon the contrary finding that Edward was not the driver of the car in question. One cannot be a "drunken driver" if he is not the driver at all. The State, therefore, could not again litigate the issue as to whether Edward was or was not driving when the accident occurred. This is the very course it followed in the conspiracy prosecution and thus the second conviction, which is factually inconsistent, must be set aside.

Admitting the factual inconsistency between the two judgments, the State nevertheless maintains it is immaterial,

looking for support to *State v. Shoopman,* 11 *N. J.* 333 (1953). The rationale of the *Shoopman* case does not apply. Here, there is no incongruous disparity between the nature and gravity of two offenses having an essential element in common, and there is, therefore, no reason to suppose the Legislature intended to allow the obtention of judgments based upon inconsistent findings of fact.

The first conviction is affirmed, and the second reversed.

*For affirmance of first conviction and reversal of second conviction*—Chief Justice WEINTRAUB and Justices HEHER, WACHENFELD, BURLING, FRANCIS and PROCTOR—6.

*Opposed*—None.