74 N.J. Super. 294 (1962)
181 A.2d 203
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT HANDY, JR., DEFENDANT.
Superior Court of New Jersey, Atlantic County Court, Law Division (Criminal).
Decided May 10, 1962.
*295 Mr. Solomon Forman, Assistant Prosecutor, attorney, for the State.
Mr. Samuel Epstein, attorney, for defendant.
CAFIERO, J.S.C.
Defendant appealed his conviction of certain violations of the Motor Vehicle Act, and a trial de novo was held thereon before this court on January 4, 1962. At its conclusion defense counsel requested and was granted an opportunity to submit a memorandum which has since been received. The sections of the act alleged to *296 have been violated are N.J.S.A. 39:4-50, 39:3-10, 39:3-40 and 39:3-29.
Defendant admits that at the time of the alleged offenses he did not possess a driver's license, and that the driver's license previously issued to him had been revoked and had not been restored. Also that the driver's license was not exhibited. The foregoing are violations under sections N.J.S.A. 39:3-10, 39:3-40 and 39:3-29 respectively.
Defendant did not testify at the trial nor did he offer any defense. However, defendant argues that it was not established beyond a reasonable doubt by credible testimony that he was operating the motor vehicle on the occasion recited in the charges and that in any event he could not be guilty of N.J.S.A. 39:3-10 and N.J.S.A. 39:3-40 because they arise "out of a common deficiency." He does not offer any specific argument as to N.J.S.A. 39:3-29, but it is to be presumed that the same logic is intended.
As to N.J.S.A. 39:4-50, which is a charge of operating a motor vehicle while under the influence of intoxicating liquor, defendant not only denies that it was established by credible testimony that he was operating the motor vehicle, but also argues that it was not established that he was under the influence of intoxicating liquor as such offense has been defined by case law, and cites State v. Rodger, 91 N.J.L. 212 (E. & A. 1917); State v. Ash, 21 N.J. Super. 469 (App. Div. 1952); State v. Glynn, 20 N.J. Super. 20 (App. Div. 1952); State v. Emery, 27 N.J. 348, 355 (1958); State v. Miller, 64 N.J. Super. 262 (App. Div. 1960).
It is important to consider initially whether there is credible testimony to establish beyond a reasonable doubt that defendant was operating the motor vehicle at the time stated, because if this is not established, to that extent defendant must be acquitted of all the charges made.
There is ample testimony to establish this fact by both direct and circumstantial evidence, and I find that this has been done clearly and convincingly beyond a reasonable doubt.

*297 I.
Ronald Sanders, a passenger in the automobile which defendant operated on this occasion, testified that he met defendant at Mrs. Fuller's bar where each of them consumed alcoholic beverages; that defendant rode with him in his boss's pick-up truck to the home of Ruth Stewart, arriving there about 2 A.M.; that he, Sanders, remained in the truck while defendant entered the premises; that defendant then came out with the keys to John Tinsley's car, whereupon Sanders left the truck at his home and rode with defendant in the Tinsley car; that they returned to Mrs. Fuller's bar, arriving at about 3 A.M.; that he, Sanders, did not enter the bar on that occasion because he suspected that his wife was inside, but that defendant entered and remained for what he termed a "good while" during which Sanders fell asleep. Defendant came out and again drove Tinsley's car while Sanders remained as a passenger. He testified that defendant wasn't drunk but had been drinking; that he was "going fast" and he told him to slow down, but that defendant said he had everything under control; that defendant had stopped for a red light at Main Street and Delilah Road in Pleasantville; that they went over an overpass, went around a curve pretty fast, and the car started to sway and ultimately hit a pole. When Sanders was questioned by Officer Braunstein he stated that he did not know who was driving because he was asleep, but on cross-examination at the trial he stated he was positive that defendant was driving the car; that he had not seen defendant come out of the bar, as he was asleep, but that he saw him driving when they passed the Red Top Bar on Delilah Road, whereupon he told him to slow down. He said that at the scene defendant claimed that John Tinsley was driving but he (Tinsley) wasn't there.
Mrs. Shirley Sanders was in the Fullers' bar when defendant entered at about 3:00 or 3:30 in the morning of April 28, and he bought her a drink as well as one for himself. She *298 testified that he acted "simple like" and that he had been drinking; that she was unable to learn from him the whereabouts of her husband, although he was outside the premises in Tinsley's car. She left the bar around 4 o'clock and defendant remained.
Mrs. Stewart testified that defendant came to her home around 1 A.M.; that he had been drinking; that he came to get John Tinsley's car keys; that Tinsley was drunk and asleep; that defendant tried to awaken him, and when he was unable to do so, picked up his jacket and took the keys.
John Tinsley testified that he visited defendant in jail on April 29 and talked with him; that defendant told him that he had an accident with his car and that he would see that he (Tinsley) got another car or he would get it fixed; and that defendant had asked him to say that he (Tinsley) was driving the car, and that defendant would take care of the bill.
All of this testimony, woven together, establishes beyond a reasonable doubt that defendant was operating the automobile during the morning hours of April 28, and particularly on the occasion when it struck the pole which brought the investigating officers to the scene. This testimony is uncontroverted and believeable. See State v. Elliott, 13 N.J. Super. 432, 435 (App. Div. 1951).

II.
Defendant admits that at the time of the accident his license was revoked for a speeding violation which had occurred in November 1959, and that he did not subsequently take the steps necessary to restore his driving privileges. He admits that at the time of the accident he did not possess a valid driver's license, but defendant argues that convictions for violation of N.J.S.A. 39:3-10 and N.J.S.A. 39:3-40 arise out of a "common deficiency."
Although this court is not reviewing the propriety or *299 legality of a conviction, but instead is trying the matter de novo, it will construe the defendant's argument to mean that the charges under N.J.S.A. 39:3-10 and N.J.S.A. 39:3-40 are either mutually incompatible or that a violation of one is merged in a violation of the other.
Only one court in New Jersey had been confronted with the above problem, and that only indirectly. State v. Williams, 21 N.J. Misc. 329, 332, 34 A.2d 141 (Recorder's Court 1943). In that case the defendant had previously been convicted of operating a motor vehicle without having a driver's license. He was thereafter charged with having operated a motor vehicle after his license had been revoked. The court held that the defendant had committed two separate offenses although they arose out of the same act, and therefore the defense of double jeopardy did not apply. This case is in accord with the overwhelming authority outside New Jersey. See Annotation, "Former Jeopardy  Automobile," 172 A.L.R. 1053, 1054.
In Pennsylvania it has been established by statute, and approved by case law, that the two offenses of driving without a license and driving while a license is revoked are separate and distinct offenses, the latter offense being punishable as a misdemeanor. See 61 C.J.S. Motor Vehicles § 639, page 742, note 78.
Reflection will also reveal that a violation of each statutory section is a different affront to or disturbance of the general welfare and safety of the community. In violating N.J.S.A. 39:3-10 the offender signifies his possible inaptitude to drive a motor vehicle, and circumvents the licensing authority, regulations, and fees of this State. However, in violating N.J.S.A. 39:3-40 the offender asserts his defiance of public sanctions imposed for community safety before his fitness to drive again has been determined by the Director of Motor Vehicles pursuant to R.S. 39:5-32, 39:5-33 and 39:5-35.
Therefore, it is clear that the evidence and law sustain the separate charges under N.J.S.A. 39:3-10 and *300 N.J.S.A. 39:3-40, that they do not arise out of a "common deficiency" as contended by defendant, and that defendant is therefore guilty of violating each of the aforesaid statutory sections.

III.
Defendant has been charged with violating R.S. 39:3-29 (not possessing and/or failure to exhibit a valid driver's license and the registration certificate of a motor vehicle).
No evidence was adduced to support the charge that the defendant Handy failed to exhibit a valid registration certificate. Consequently, insofar as the charge purports to include a violation of the above section for failure to possess and/or exhibit a valid registration, it must fail for lack of proof, and defendant acquitted of violating the above section in that respect.
Secondly, charges of violations of N.J.S.A. 39:3-10 and R.S. 39:3-29, occurring at the same time and arising out of the same act of the same defendant are mutually incompatible, for the reason that a person without a driver's license could not possess or exhibit a license when requested to do so.
It seems that R.S. 39:3-29 was intended to apply to the situation where the driver has had a valid driver's license issued to him, which is still currently valid at the time that he is requested to exhibit it, but that he does not have immediate possession of it; or if he does have immediate possession, that he arbitrarily refuses to produce it. Therefore, a charge of failure to produce a valid driver's license is mutually incompatible with a charge of driving without a driver's license, and would be oppressive and unjust in its application to the defendant.
The charge in this respect, of violating R.S. 39:3-29 is therefore dismissed, and defendant is accordingly acquitted of said charge.

*301 IV.
Finally, defendant urges that the State failed to produce sufficient evidence to prove the essential elements of a violation of N.J.S.A. 39:4-50.
It has been established that defendant Handy was driving the car in question. (See point I above.)
In State v. Emery, 27 N.J. 348, 355 (1958), the court held that it is sufficient if the presumed offender has imbibed to the extent that his physical coordination or mental faculties are deleteriously affected. Direct and circumstantial evidence is admissible to prove influence of intoxicating liquor. Ibid. Expert testimony is not needed, and a person of ordinary intelligence, although lacking special skill, knowledge and experience, but who has had the opportunity of observation, may testify whether a person was intoxicated. State v. Pichadou, 34 N.J. Super. 177, 180 (App. Div. 1955).
The evidence adduced at the trial de novo shows the following:
(1) Defendant Handy had been drinking for several hours before the accident (testimony of Sanders, Mrs. Sanders and Ruth Stewart).
(2) Defendant was acting "simple like" about an hour before the accident (Ruth Stewart).
(3) At the scene, shortly after the accident, Officer Braunstein had difficulty keeping the defendant away from live wires strewn over the highway as a result of the impact with a utility pole.
(4) At that time Officer Braunstein observed the defendant "running back and forth and shouting profanities and * * * acting in an intoxicated condition," staggering, using obscenities and swaying.
(5) Officer Braunstein got both (Sanders and defendant Handy) into the Accident Bureau car, whereupon moments later both men were sound asleep and remained asleep until they arrived at Atlantic City city hall, when he awoke them.
*302 (6) Defendant Handy argued with and pushed an electric company repairman at the scene of the accident when he advised defendant and others not to go near the live wires (testimony of Sanders).
(7) Officer Braunstein, in clinically observing defendant at the police station in city hall, noticed that his eyes were bloodshot; that his clothes were disheveled; that he acted in a very cocky and antagonistic manner and was very talkative; that there was a very strong odor of alcohol on his breath; that he spoke incoherently; that he swayed; that his finger-to-nose test was very uncertain; that after defendant was booked he sat down and again fell asleep; that after he was placed in a cell he kept pounding on the bars and screaming; that before this he was screaming and pounding his fists on the desk, and objecting to his arrest; that his opinion was that defendant Handy was under the influence of intoxicating beverage; and that in his opinion defendant Handy at that time (40 or 50 minutes after the time of the accident) was not a fit person to drive an automobile properly.
(8) Defendant Handy had no opportunity to drink anything between the time that Officer Braunstein picked him up at the scene of the accident and the time that the Officer made the aforesaid clinical observations and formed his opinions.
(9) Patrolman Warlich (desk sergeant at the Atlantic City Police Department and on duty when Officer Braunstein brought defendant Handy into the police station) heard a loud commotion and observed defendant; and he appeared to him to be in a drunken rage, was pounding on the Accident Bureau desk, and was using profane and incoherent language.
(10) Patrolman Warlich, who was present when Officer Braunstein clinically observed defendant, also observed that defendant Handy could not touch his nose with his fingertip; that Handy could not walk a straight line along the floor when he attempted to do so; that Handy swayed from side *303 to side; that Handy's breath had a strong odor of alcohol; that his eyes were bloodshot; that he had all the appearances of a man who was definitely under the influence of liquor; that it was his conclusion that Handy's mental and physical faculties were definitely impaired and that if he was driving he had no reason to be driving a car; and that he was definitely under the influence; that he was not fit to drive a vehicle; that the police had considerable difficulty putting Handy in a cell at the police station; and that subsequent to his incarceration Handy pounded on the cell bars for approximately two hours until the police threatened him with a padded cell, after which he subsided considerably.
It is clear from the testimony of Officer Braunstein and Patrolman Warlich that they considered and concluded that defendant Handy was under the influence of intoxicating liquor at the time of the accident; and that he had imbibed to an extent that his physical coordination and mental faculties were deleteriously affected, even though it is not necessary to prove both State v. Ash, supra.
The record is replete with direct and circumstantial evidence that defendant Handy's physical coordination or mental faculties were deleteriously affected.
As stated in the Emery case, it is not necessary as a prerequisite to conviction that the accused be absolutely drunk, in the sense of being sodden with alcohol, but that it is sufficient if the presumed offender has imbibed to the extent that his physical coordination or mental faculties are deleteriously affected. State v. Emery, 27 N.J., at page 355.
Counsel for defendant cites as improper and beyond the power of the court the questions propounded by the court and directed to Officer Braunstein. However, it is settled law in this State that the court may interrogate a witness with leading questions or otherwise in order to elicit the full facts in the case. State v. Manno, 29 N.J. Super. 411, 417 (App. Div. 1954); State v. Riley, 28 N.J. 188, 200 (1958); see also 3 Wigmore, Evidence (1940), section 784.
*304 I find that it has been established beyond a reasonable doubt that defendant was operating a motor vehicle while under the influence of intoxicating liquor, in violation of N.J.S.A. 39:4-50. And this Court so holds.

V.
The decision of this court is that defendant Handy is guilty of having violated N.J.S.A. 39:3-10, N.J.S.A. 39:3-40 and N.J.S.A. 39:4-50, as charged; and that he is to present himself before this court on notice from the prosecutor to be sentenced on said convictions.