STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN C. HAINES, DEFENDANT-APPELLANT.

Argued January 16, 1956—Decided January 30, 1956.

440

*Mr. Charles A. Cohen* argued the cause for the defendant-appellant (*Mr. Samuel P. Orlando,* attorney, and *Mr. John S. Conroy, 3d,* associate attorney).

*Mr. David D. Furman,* Deputy Attorney-General, argued the cause for the respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General, and *Mr. Saul S. Schechter,* Deputy Attorney-General, attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J. This appeal presents us with a further development in the case of *State v. Haines,* 18 *N. J.* 550 (1955), arising by reason of the fact that several similar indictments for false swearing handed down in the Maple Shade investigation which depended primarily for their proof upon the testimony of one George Page were dismissed on motion of the Attorney-General, because in his opinion it was fruitless to proceed further with the prosecutions. The case is before us by reason of the denial by the Burlington County Court of the defendant's motion for a new trial on the ground of newly discovered evidence and a certification on our own motion of the appeal from that order while it was pending in the Appellate Division of the Superior Court.

During the years 1952 and 1953 the Burlington County grand jury was engaged in an extensive investigation concerning alleged violations of the gambling laws in that county and misconduct in office of certain public officials in connection therewith. It heard about 175 witnesses on 33 or 34 occasions over a period of approximately 15 months, which resulted in the handing down of 17 separate indictments charging that 17 of the witnesses, mostly public officials, who appeared before it in the investigation had willfully sworn falsely; see *In re Pillo,* 11 *N. J.* 8 (1952); *State v. Pillo,* 15 *N. J.* 99 (1954); *State v. Peterman,* 29 *N. J. Super.* 236 (*App. Div.* 1953). The defendant Haines was one of those public officials.

Five of the persons indicted pleaded *non vult* in February and March of 1954, before the trial of the defendant Haines, and received suspended sentences and were fined or placed on probation. A sixth pleaded in March of 1955 and received similar treatment.

In October 1954 the State moved its case against the defendant, John C. Haines. At that trial the only witnesses against Haines were the deputy foreman of the grand jury who administered the oath to the defendant, the stenographer who took down the questions and answers at the grand jury hearing, and George Page. Another witness, Anthony Marinella, was called on behalf of the State, but he consistently refused to answer any of the material questions asked him on the ground that he might thereby tend to incriminate himself. The principal witness, Page, testified to several events involving Haines, which Haines had previously denied under oath in his testimony before the grand jury on its investigation. These events are set forth in detail in the previous opinions in this case, particularly on pages 561–562 and pages 567–570 of 18 *N. J.* The defendant denied everything and produced evidence tending to depreciate the credibility of Page and show that he was motivated by spite and a desire for revenge. The jury returned a verdict of guilty. On appeal, certified by this court, the conviction was affirmed by a four to three decision; 18 *N. J.* 550.

As soon as the mandate of affirmance came down from this court on that appeal, the defendant moved before the same trial judge, *R. R.* 3 :7–11 (*a*), for a new trial on the ground that newly discovered evidence which bore materially on the credibility of Page, and facts occurring subsequent to the trial which also bore materially on the credibility of Page, in all fairness and justice required that such relief be granted to him. We shall dispose of the "newly discovered evidence" issue first.

1. On the trial of John Pizzio, a Burlington City policeman and one of the 17 public officials indicted, which was held after the Haines trial, George Page gave the following testimony:

"Q. Didn't you use the name of Kenneth Page at one time also?
A. No.
Q. Never?
A. No. * * *"

Haines says that evidence was subsequently introduced in that trial, and not refuted by Page, which tended to show that George Page had represented himself as his brother "Kenneth Page" and, therefore, the answers given by him to the questions set forth were not true. For the purposes of our decision in this case, we assume the correctness of that assertion.

In denying the motion for a new trial the trial judge pointed out that the question of Page's credibility had been thoroughly contested on cross-examination by experienced counsel and became the chief, if not the only, issue in the case, and the conclusion to be drawn from the discussion of these proceedings as they appear in the record before us is that the trial judge did not feel that the "newly discovered evidence," if it had been admitted on the trial, would have changed the result. With this conclusion, at least, we agree.

Motions for new trials, disruptive as they are of the judicial process, are not favored and are properly entertained with caution by the trial courts. *State v. Hunter*, 4 *N. J. Super.* 531, 536 (*App. Div.* 1949). But when the necessary elements appear, caution must give way to reason and justice and the application for such relief granted. *Kursheedt v. Standard Bleachery Co.*, 77 *N. J. L.* 99 (*Sup. Ct.* 1909); *Ellis v. F. L. C. Martin Automobile Co.*, 77 *N. J. L.* 339 (*Sup. Ct.* 1909); *Dundee Manufacturing Co. v. Van Riper*, 33 *N. J. L.* 152 (*Sup. Ct.* 1868); *Young v. McPherson*, 3 *N. J. L.* 455 (*Sup. Ct.* 1811); *Spencer v. Erie R. Co.*, 79 *N. J. L.* 5 (*Sup. Ct.* 1909); *Carr v. Riskin*, 8 *N. J. Misc.* 659 (*Sup. Ct.* 1930).

Most recently in *State v. Vaszorich*, 13 *N. J.* 99, 130 (1953) and previously in *State v. Bunk*, 4 *N. J.* 482, 486 (1950), this court set forth the test necessary to be met to entitle a party to a new trial on the ground of newly dis-

covered evidence. We said (1) that the evidence must be material to the issue, not merely cumulative, nor impeaching, nor contradictory; (2) that it has in fact been discovered since the former trial and could not have been discovered before such trial by the exercise of due diligence; and (3) that it would probably change the result if a new trial was granted.

The defendant contends that all three factors have been satisfied, and that if the evidence is construed as "cumulative" such factor in and of itself does not necessarily prevent a new trial from being granted to him, *Mulock v. Mulock*, 28 *N. J. Eq.* 15 (*Ch.* 1877).

Assuming that the proffered evidence meets the requirement of element (1), we are not satisfied that the requirements of elements (2) and (3) are met within the meaning of the rule.

The fact, of course, is that the specific evidence—the denial by Page that he used an alias, and proof of the fact to the contrary—could not have been known until those facts occurred on the Pizzio trial which was subsequent to the Haines trial. Therefore, strictly viewed, it is a fact discovered after the former trial which could not have been discovered before such trial by the exercise of due diligence. But to extend the doctrine set forth in the *Bunk* and *Vaszorich* cases, *supra*, to include evidence which did not exist at the time of the trial sought to be nullified but which became a fact only *after* that trial is most dangerous, indeed. Even counsel conceded on oral argument that it would be pushing the present rule as to newly discovered evidence beyond its possible limits to grant a new trial on this ground. It is not the same as a fact subsequently occurring that has direct and positive relation to the guilt or innocence of the defendant, such as a confession by another of the commission of the crime for which the defendant has been found guilty. This type of *ex post facto* event relates directly to the state of facts that existed prior to the conviction. But the commission of an act by a witness subsequent to his testimony given in a trial which is only a single factor tending to impair

his credibility at that subsequent date is a dubious basis for setting aside a trial on the ground that this constitutes "newly discovered evidence."

■ By the weight of authority the test is whether the evidence if introduced is such as ought to have led the jury to a different conclusion—one of probability and not mere possibility, *State v. Bunk, supra*, 4 *N. J.* 482, and the cases cited therein on *pages* 486 and 487. We think in the circumstances here where, as we have indicated, counsel for the defendant "had one purpose in mind and that was to make known the fact that George Page is a liar," the probable effect solely of this "newly discovered evidence" would not have been to change the result already reached.

2. As a result of this motion for a new trial by the defendant, we now learn of the very positive adverse impression of the trial judge with respect to Page's testimony given at the Haines trial. On the hearing of the motion he said:

"If I am not already on record in this respect, I will put myself on record at this time. If you asked me if I would believe the witness George Page, I would say unhesitatingly 'no' * * *"

"Well, I will say that I would not believe him and the testimony that he offered here in this court room did not impress me * * * my position is still that the matter of credibility was for the jury to determine and it found a conclusion of guilty and I have no veto power over what the jury did, even though I am in disagreement with that verdict. I have no veto power because my understanding was and still is, in spite of the comments in the dissenting opinion, that it is a matter of credibility and if a jury sees fit to believe, that is a fact-finding body and it is not the province of the Court. * * * Now if injustice is done in this case, and the weight attributed to this testimony, if it has been done and I don't know that it has been done, certainly it was done by this fact-finding body. Their answer is not on my conscience. It is on theirs. I have performed my responsibility in this case and believe me, I have taken it home with me. I slept with it, but I have not yet seen any legal justification for any intrusion on my part. * * *"

We are unable to reconcile these expressions of the trial judge with his charge to the jury that found Haines guilty where he said:

"Now, in the case that you have heard, I believe the issue is about as simple as one can be. We have here—and at this point I am

speaking about the facts involved in the case, and if I refer to anything that does not conform with your recollection, please discount what I might say, as I have previously urged you to do. The witness George Page came before you, and he disclosed his background as a gambler. He also disclosed that he traveled under an assumed name. I mention that to you because that may be another fact that would impress you one way or the other. If it does, you may let it impress you; if it doesn't, it certainly doesn't have to. He testified substantially to facts which would support the allegations contained in Counts 3 and 4 of the indictment, and I will not go into the details of his testimony in that respect. The defendant, John C. Haines, has testified before you to facts which are in direct conflict with the testimony offered by the witness George Page. I say that they are in direct conflict with that testimony. That is my recollection. If my recollection varies from yours, believe me, it is your recollection which controls solely. The question, really simple as it is legally—whether or not this defendant wilfully swore falsely before the Grand Jury, simple as that issue may be—reduces itself to a matter of credibility. Which witness are you willing to believe, under the rules that I have announced to you?"

By this charge he made it clear that credibility was the only true issue for the jury to resolve. Having resolved that question, the jury was then told that they had to determine whether the State had proven, beyond a reasonable doubt, that the defendant had intentionally and knowingly sworn falsely. It thus appears that the credibility of Page, rather than being only one factor to be resolved in order to determine the principal issue of guilt, was the fact in and of itself upon which the entire case against this defendant depended.

 Credibility is truly an issue for the jury. But when it appears from the testimony and other visual evidence that the credibility of a witness is in fact so contrary to what the jury should have found it to be as to require a conclusion that the verdict was the result of mistake, partiality, prejudice or passion, the duty is upon the trial judge in the exercise of his discretion to set it aside. With due appreciation of the trial judge's position in this concededly close case, we point to the direction of *R. R.* 3:7-11(*b*), which states that he may set aside a verdict as against the weight of the evidence if it clearly and convincingly appears after having given due regard to the opportunity of the jury to

pass upon the credibility of the witnesses that their conclusion could only have been motivated by a mistake, partiality, passion or prejudice. When this is so, the trial judge's obligation is to set aside the verdict and not merely to satisfy himself that any error in the conviction is not upon his conscience.

■ This, of course, does not mean that simply because the trial judge reaches a conclusion on the evidence different from that of the jury he should nullify their conclusion. If it is not unreasonable to conclude that the guilt of the defendant has been established in compliance with the rules, then the verdict must stand. But, where the testimony of a single witness is so unbelievable and where reliance upon it by the jury was so unreasonable as to force the conclusion that it was solely the result of their impartiality, passion, prejudice or a mistake, then it must be set aside.

■ But a caveat must be entered here. In criminal cases this power of the trial judge must be used with utmost discretion, and particularly so in cases where the issue of the credibility of a witness is fully and forcefully litigated in the trial court, because, unlike in a civil case the State has no right of appeal from an order granting a new trial, and common experience shows us that if a new trial is granted on the ground that the verdict is against the weight of the credible evidence the natural consequence in most cases is the voluntary dismissal by the prosecutor; see *Report of the Committee on Appeals by the State in Criminal Cases,* March 1, 1955, *page 9.* In that report, it was recommended that:

"No injustice would come to a defendant if the State, in addition to considering the practicality of a new trial, should have the alternative of appealing the action of the trial court."

This recommendation was presented to the Judicial Conference of June 1955, and is still being considered. Meantime the caveat stands as the law of this State.

3. We turn now to the only remaining issue raised on the motion for a new trial and the sole basis for our action in granting the relief sought by this defendant.

Pending the appeal from the conviction in this case the State moved three of the remaining cases, those against Joseph Patt, Frank Rado and John Pizzio, Burlington City policemen under suspension. In the Patt case the jury was unable to reach a unanimous verdict after eight hours of deliberation and were discharged. In both the Rado and Pizzio cases the jury returned verdicts of not guilty. At all these trials Page and Marinella were witnesses. Page testified, but Marinella repeated his previous performance in the Haines case and refused to answer the material questions put to him, as a result of which he was subsequently held in contempt.

Then still pending the appeal by Haines from his conviction, and on February 21, 1955, the Deputy Attorney-General who tried all of the cases moved before the same county judge, who sat in the Haines case and who sat in two of the other cases already mentioned, for a dismissal of the indictments for false swearing against Clifford Kane, Charles Fellner, Clarence Bennett, John Skok, John F. Reese and also Joseph Patt, whose trial we have already noted ended with a divided jury. The reasons given by the State for such action were that since George Page was the principal witness aside from Marinella, and since it might reasonably be expected that Marinella would repeat his refusal to testify, and further, since the results in three of the four cases tried ended adversely to the State and in the fourth, the Haines case, the ultimate resolution of the issue was barely in the State's favor, in all probability trials of these designated indictments would not end conclusively or if they did, the results would be verdicts of not guilty. With specific reference to the Kane indictment the prosecuting attorney said:

"* * * in fairness to the citizens of the County of Burlington, our office feels that it would be a waste of time and money to move this indictment."

In connection with the Fellner indictment, he said:

"Frankly, in fairness to the State's position, I must conclude that the testimony of George Page in itself, without any corroboration, will not convince a jury of the truth of the allegations * * *"

On the Bennett indictment, he said:

"* * * and I again refer to Page because of the fact that jurors, whether justly or unjustly, properly or not, have chosen to disbelieve him on three separate occasions. That being so, if we take that fact about Page, if we take the other fact about Marinella, we have no other proof than that."

On the Skok indictment, he said:

"May I state to your Honor that in the first trial, State versus Haines, testimony came out that Page had given this defendant money, but there was no implication that it was for any corrupt purpose and what I say now applies equally as well in the next case, which is also a State Policeman. Frankly, I feel that even if the proof that we had to offer were given by George Page, and in effect he would be the only witness, it is my opinion that a jury of this kind would not convict. Again I repeat that I do not think it is fair to the citizens of this County to have to go through a trial, with the attendant costs, trouble and expense, when I think the result is foreordained."

By way of general comment the trial court stated:

"I might say, Mr. Attorney General, that I am satisfied your office has thoroughly investigated these matters and makes these motions with some hesitancy. I can assure you that I grant them with some hesitancy and if there was any possible chance, regardless of how slim it might be, that these particular persons who have been accused of these crimes could be convicted and warranted the presentation of the trial of these indictments, I would by no means grant the dismissal, as we are presently engaged in doing, because these men are charged with upholding the law and even held to a greater degree of being faithful to their trust and to the noncommission of crime than ordinary citizens, and it is almost sickening that people in these high offices have been tainted as they are and maybe it is fortunate for them, but in any event, under our system everyone is innocent until proven guilty. If there is no proof, if these have been guilty, they are just being discharged of a civil and criminal responsibility and in all probability will have to answer to someone else at some future time for any wrongdoing that may have taken place."

The State urges that the inferences which we necessarily draw from the motions to dismiss the indictments in the six cases is neutralized by the pleas of *non vult* by six other

defendants. But the pleas of these defendants do not furnish proof against Haines. Locked in the minds of these defendants is the knowledge of their guilt or innocence of the crime charged and we have no way of knowing what considerations induced their pleas. But the State's view of the indictments which depended on the testimony of Page is an open book. The inferences to be drawn from the action of the State in dismissing the indictments is unambiguous. In these six cases we have the same type of defendants, the same crime charged, the same single crucial State's witness and the same prosecuting attorney appearing before the same judge, with one exception. Where the prosecuting attorney takes the position that Page cannot be relied upon in the six cases where he sought dismissal, how can he consistently take the position on this application that the conviction in this case was a fair one?

In the peculiar circumstances of this case, confronted as we are with the skepticism of the prosecuting attorney, the concession that the question of the defendant's guilt is a close one, the positive adverse appraisal by the trial court of Page's testimony, and the dismissal of the untried indictments, it would be less than obvious justice not to grant a new trial. The ancient view that it is better that many of the guilty be set free than to have one innocent man suffer must still be reasonably adhered to. While absolute justice may not be attainable in a workaday world, we must strive for the solution nearest to it. We are satisfied that a new trial will furnish that solution in this case.

The order denying the defendant's motion for a new trial is accordingly reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and JACOBS—6.

*For affirmance*—None.