# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6021-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ROBERT THOMAS, a/k/a
KOFI BAYETE,

     Defendant-Appellant.

_____

Submitted September 17, 2019 – Decided September 26, 2019

Before Judges Yannotti and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 92-07-0823.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the briefs).

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (John K. Mc Namara, Jr., Chief Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

Defendant[1] appeals from the June 19, 2018 Law Division order denying his motion for a new trial based upon newly discovered evidence.  We affirm.

I

In June 1993, a jury found defendant guilty of all counts of a ten-count indictment that charged him with two counts of first-degree aggravated sexual assault, two counts of second-degree burglary, and related charges.  The trial court sentenced defendant to an extended term of life imprisonment, with thirty-five years of parole ineligibility.

The relevant events occurred in September and October, 1991, at the Hensyn Village complex in Mount Olive Township.  Defendant and his alleged victims, S.A.[2] and M.T., all resided in that complex.  On October 12, 1991, defendant used S.A.'s phone multiple times in her apartment during the day and later appeared in her doorway at 3:20 a.m.  Defendant put a knife to her throat and proceeded to cover her mouth with a pillow.  He entered her vaginally and had difficulty maintaining an erection.  The assault took place on S.A.'s bed.  After defendant left, S.A. noticed he cut her phone cord.

---

[1]  While in prison, defendant legally changed his name from Robert Thomas to Kofi Bayete.

[2]  We use initials to protect the privacy of the victims.

2

On October 23, 1991, M.T. reported defendant raped her. Similar to the circumstances with S.A., defendant put a knife to her throat and then covered her mouth with a pillow. Defendant had difficulty maintaining an erection and cut M.T.'s phone cord before he left. M.T. immediately reported the incident to police.

S.A. learned of M.T.'s rape and proceeded to file a police report against defendant. Initially, she did not file a report out of fear and fled to her parents' home in Connecticut. Both victims provided a description of defendant and identified him at trial.

Body exemplars were taken from S.A., M.T., and defendant. Janice Williamson, a technologist at CBR Laboratories, conducted the DNA test and confirmed defendant was the source of the semen present at the scene of M.T.'s sexual assault. Gail Tighe, a senior forensic scientist employed by the New Jersey State Police, testified that the two pubic hairs recovered from S.A.'s sheets matched defendant's pubic hair after conducting a microscopic comparison.

Defendant appealed his conviction and sentence, and we affirmed. State v. Thomas, No. A-6140-93 (App. Div. Nov. 6, 1996). The Supreme Court

thereafter denied defendant's petition for certification.  State v. Thomas, 149 N.J. 37 (1997).

Defendant filed a petition for post-conviction relief (PCR), which the Law Division denied on January 17, 2001.  We affirmed the trial court's order denying PCR.  State v. Thomas, No. A-5218-00 (App. Div. March 7, 2003), and the Supreme Court denied certification.  State v. Thomas, 177 N.J. 495 (2003).

In 2005, the Innocence Project represented defendant pro hac vice and filed a motion to compel DNA testing on evidence related to M.T. found at the crime scene.  The DNA test confirmed defendant's DNA at the scene.  The Innocence Project later withdrew its representation.

In 2006, defendant filed a PCR petition, seeking to correct what he claimed is an illegal sentence.  He also sought a new trial and additional DNA testing on two hair samples found in the apartment of S.A.  The PCR court denied the petition, finding the results of the DNA tests on the hair samples was insufficient to warrant a new trial because the results were, at best, neutral and not exculpatory.  We affirmed the order denying PCR.  State v. Thomas, No. A-4103-09 (App. Div. July 19, 2012).  The Supreme Court denied certification. State v. Thomas, 213 N.J. 45 (2013)

In 2009, defendant filed a pro se motion for an order permitting additional DNA testing on two hair samples found in S.A.'s bedding. Mitochondrial DNA tests conducted on the two hair samples excluded defendant from one hair sample, but the other hair sample showed a 99.74 percent probability defendant or a maternal relative matched the source.

In November 2009, Judge Thomas V. Manahan denied defendant's second PCR petition, his motion for a new trial, and defendant's pro se motion to have an expert retained to conduct additional DNA testing. Judge Manahan held the DNA test results of the hair found on the mattress cover were insufficient to warrant a new trial because the evidence was neutral rather than exculpatory. We affirmed the order denying PCR and defendant's motions. State v. Thomas, No. A-4103-09 (July 19, 2012).

In March 2017, defendant filed a motion for a new trial, alleging newly discovered evidence. On June 15, 2018, following oral argument, Judge Michael E. Hubner denied defendant's motion. He concluded the newly discovered evidence "related to questioning the reliability of microscopic hair analysis that [has] arisen many years after the defendant was convicted" did not warrant a new trial. He opined that while defendant attempted to attack the reliability of microscopic hair analysis, his argument still centered around the

5

same question of whether evidence that excluded defendant as a source of a single hair warranted a new trial. Judge Hubner held the trial court previously adjudicated this question; as a result, defendant was procedurally barred from raising this claim based on Rule 3:22-5.

Assuming for the purposes of defendant's motion that Tighe's testimony regarding a match of the disputed hair was erroneous, Judge Hubner stated defendant "has to come forward and demonstrate . . . there may be new evidence that excludes him as the source of the solitary stray hair inside the victim's bedroom was material." Since defendant failed to demonstrate the materiality of this evidence, Judge Hubner found no "reasonable probability that the jury would have reached a different verdict if it heard . . . this newly proffered evidence regarding the reliability of the hair analysis." Judge Hubner further explained mitochondrial and nuclear DNA testing replaced microscopic hair analysis and the results of those tests were "consistent with the jury's conclusion as to guilt."

Defendant then filed this appeal, presenting the following point of argument:

> DEFENDANT'S MOTION FOR A NEW TRIAL
> BASED UPON NEWLY DISCOVERED EVIDENCE,
> PERTAINING TO THE S.A. CONVICTIONS,
> SHOULD HAVE BEEN GRANTED DUE TO THE

DEBUNKED "SCIENCE" OF MICROSCOPIC HAIR ANALYSIS.

By leave granted, defendant filed a supplemental brief, presenting this additional point of argument:

> DEFENDANT'S MOTION FOR A NEW TRIAL BASED UPON NEWLY DISCOVERED EVIDENCE, PERTAINING TO THE S.A. CONVICTIONS, SHOULD HAVE BEEN GRANTED DUE TO GAIL TIGHE'S LACK OF QUALIFICATIONS AND CREDIBILITY.

II

Defendant contends the trial court erred in denying his motion for a new trial because he was convicted in a proceeding that involved erroneous microscopic hair analysis testimony that identified him as the source of the hairs found on S.A.'s sheets.

"A motion for a new trial upon the ground of newly discovered evidence is not favored and should be granted with caution by a trial court since it disrupts the judicial process." State v. Conway, 193 N.J. Super. 133, 171 (App. Div. 1984) (citing State v. Haines, 20 N.J. 438, 443 (1956)). "A motion for a new trial is addressed to the sound discretion of the trial court, and its determination will not be reversed on appeal unless there has been a clear abuse of that

discretion."  State v. Puchalski, 45 N.J. 97, 107 (1965) (quoting State v. Artis, 36 N.J. 538, 541 (1962)).

When seeking a new trial based on newly discovered evidence, our Supreme Court requires the defendant to meet a three-part test:

> To meet the standard for a new trial based on newly discovered evidence, defendant must show that the evidence is 1) material, and not "merely" cumulative, impeaching, or contradictory; 2) that the evidence was discovered after completion of the trial and was "not discoverable by reasonable diligence beforehand"; and 3) that the evidence "would probably change the jury's verdict if a new trial were granted." State v. Carter, 85 N.J. 300, 314 (1981).
>
> [State v. Ways, 180 N.J. 171, 187 (2004).]

A defendant must satisfy "all three prongs" of the Carter test to obtain a new trial.  Ibid.  The court must review the newly discovered evidence "with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial."  Id. at 187-88.  The defendant bears the burden to show he is entitled to a new trial.  State v. Johnson, 34 N.J. 212, 223 (1961) (stating "[f]ailure of a defendant to satisfy any one of the three prerequisites of newly discovered evidence is sufficient to warrant a denial of a motion for a new trial.").

8

Under prong one of the Carter test, a defendant must show the evidence "ha[s] some bearing on the claims being advanced." Id. at 188 (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997)). This requires the court to engage in "an evaluation of the probable impact such evidence would have on a jury verdict." Id. at 188-89. Because the issue of materiality inquires whether the evidence would change the jury's verdict, the court should evaluate the first and third prongs of the test together. Id. at 189.

Under prong two of the Carter test, "the new evidence must have been discovered after completion of trial and must not have been discoverable earlier through the exercise of reasonable diligence." Id. at 192. A defendant must "act with reasonable dispatch in searching for evidence before the start of the trial." Ibid.

Under prong three of the Carter test, a defendant must show the evidence "would probably change the jury's verdict if a new trial were granted." Id. at 187 (quoting Carter, 85 N.J. at 314). "The power of the newly discovered evidence to alter the verdict is the central issue . . ." before the trial judge. Id. at 191. "[T]he test is whether the evidence if introduced is such as ought to have led the jury to a different conclusion — one of probability and not mere possibility[.]" Haines, 20 N.J. at 445.

A-6021-17T4

Here, Judge Hubner properly found defendant's first claim failed to satisfy the first and third prongs of the Carter test. Both M.T. and S.A. provided in-court identifications at trial. Although previously unsure, S.A. identified defendant in court explaining she feared defendant would return to her home and harm her child. The State also provided evidence revealing the virtually identical attacks of S.A. and M.T. Moreover, the mitochondrial DNA results were not dispositive in establishing S.A. incorrectly identified defendant because the hair found in the fitted sheet tested more likely than not to belong to defendant or to his maternal relative. The second hair provided greater certainty defendant was in S.A.'s room on the night of the attack. Therefore, the new evidence in the present case is not "material." Ways, 180 N.J. at 187.

The DNA evidence strongly suggests defendant not only was in S.A.'s apartment but was also in her bed because his hair was found in her fitted sheet. Thus, the evidence tends to corroborate the identification and "would [not] probably change the jury's verdict if a new trial were granted." Id. at 187. In fact, the evidence is stronger than the initial trial because there is a 99.74 percent probability that defendant was the donor or the hair came from a relative on his maternal side. Therefore, defendant's claim failed to satisfy the first and third prongs of the Carter test.

A-6021-17T4

Defendant alleges that Tighe provided erroneous testimony because subsequent mitochondrial testing results excluded him as a source of one of the two hairs. He contends Tighe lacked qualifications as a trial expert because she concealed the extent of her scientific education to secure a promotion and was subsequently disciplined by her employer. Additionally, he argues Tighe testified in an unrelated case regarding microscopic hair analysis, and the defendant in that case was subsequently exonerated based on DNA testing.

In denying defendant's motion for a new trial, Judge Hubner concluded that the impeachment of Tighe's trial testimony based on her alleged lack of qualifications as an expert would not lead to a different verdict. He reasoned Tighe's conclusion as to one of the hairs was correct based upon the mitochondrial DNA results, which showed that defendant or a maternal relative was the source of the hair found on the fitted sheet.

In the present case, defendant's second claim also fails the first and third prongs of the Carter test. Tighe's partially inaccurate testimony is not dispositive to establish that S.A. incorrectly identified defendant. Although the mitochondrial DNA test results suggest that Tighe's microscopic hair analysis testimony was partially inaccurate as to defendant being the source of one of the two hairs, the results do not call into question the probative value of the other

11

hair. Subsequent mitochondrial DNA testing excluded defendant as the source of the hair found on S.A.'s mattress cover and inculpated defendant as the source of the hair found on S.A.'s fitted sheet.

The newly discovered evidence does meet the second prong of the standard for a new trial. Evidence regarding Tighe's subsequent disciplinary history relating to her scientific education was not available at the time of defendant's trial in 1993, nor was her erroneous testimony in an unrelated case that led to the conviction of a defendant who was later exonerated.

While the questions related to Tighe's qualifications and credibility could provide fodder for argument before the jury, this evidence is not exculpatory in nature. Moreover, it does not undermine S.A.'s identification of defendant as her attacker. The new evidence in the present case, therefore, is not "material." Ways, 180 N.J. at 187.

Regarding the third prong of the Carter test, it is doubtful whether the new evidence "would probably change the jury's verdict if a new trial were granted." Ways, 180 N.J. at 187. The mitochondrial DNA test result indicating that defendant was a source of the hair found on S.A.'s fitted sheet provides stronger evidence of defendant's guilt than was presented at the time of trial. In light of the later evidence supporting the accuracy of Tighe's testimony regarding the

12

hair recovered from the fitted sheet, the later discovered evidence regarding Tighe's qualification and credibility would probably not "change the jury's verdict if a new trial were granted." <u>Ways</u>, 180 at 187.  Judge Hubner correctly denied defendant's motion for a new trial.

Affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION