# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3030-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.S.,

     Defendant-Appellant.

_____

> Submitted April 3, 2019 – Decided November 15, 2019
>
> Before Judges Alvarez and Nugent.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 06-10-1466.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Andrew Robert Burroughs, Designated Counsel, on the brief).
>
> Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

NUGENT, J.A.D.

Defendant, J.S., is serving an aggregate twenty-four year and three month prison term on two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), two counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), and one count of fourth-degree contempt, N.J.S.A. 2C:29-9. A jury convicted him of the aggravated sexual assault offenses based primarily on the testimony of his daughters, E and V.[1] Defendant exhausted his direct appeals and a court denied his first post-conviction relief (PCR) petition. Defendant has filed this appeal from an order denying reconsideration of his second PCR petition. In his second petition, defendant claimed various counsel who represented him did so ineffectively and newly discovered evidence calls into question the veracity of his daughters' testimony. Finding no error in the trial court's rejection of defendant's claims of ineffective assistance of counsel or its determination that the purported newly discovered evidence did not constitute sufficient legal grounds for a new trial, we affirm.

I.

A.

---

[1] We use letters to protect the privacy of the victims.

A-3030-17T4

The evidence the State presented at defendant's trial is detailed in our opinion affirming defendant's conviction, State v. J.S., No. A-1603-07 (App. Div. April 15, 2010) (slip op. at 3-5), certif. denied, 203 N.J. 96 (2010) and need not be repeated in its entirety. In short, the State presented evidence that defendant was a strict parent who wanted his children to do well in school. He punished his daughters, E and V, both under the age of sixteen at the time, by requiring them to stay in their rooms and read rather than watch television or talk on the phone. Id. at 3. Eventually, defendant offered to commute their punishments in exchange for their submitting to his sexual demands. Id. at 3-4. The children waited two years before disclosing the abuse. Id. at 4.

Defendant testified and denied the allegations. He acknowledged he wanted his daughters to excel in school and he punished them by requiring them to remain in their rooms and read books. They both made the honor roll, one with straight A's. He testified he would initially require them to remain in their rooms for a month, but usually let them out after a week or two weeks, because they behaved, not because they submitted to his sexual demands. Id. at 4-5. The jury rejected his testimony.

B.

In addition to filing a direct appeal, defendant filed a PCR petition, which the trial court denied. Defendant appealed and we affirmed. State v. J.S., No. A-2490-12 (App. Div. Apr. 1, 2014). One year and thirteen days after we affirmed the denial of defendant's first PCR petition, defendant filed a second PCR petition dated June 2, 2015. The order denying the second petition is the subject of this appeal.

In his form petition, in response to the written directive to specify the facts upon which relief was based, as well as the legal argument and all claims, defendant wrote: "[c]laiming ineffective counsel, lawyer failed to investigate, failure to present alibi, failure to communicate and provide discovery. New evidence waiting on Affidavit in near future."

The judge who heard defendant's second PCR petition denied it on January 13, 2016. In a written opinion, the court noted defendant had "raised the same and substantially similar issues in his first [PCR] application and had the opportunity to address the issues now raised in his recent application." Because defendant raised the same issues he had raised in his first PCR petition, and failed to provide evidence to support the issues raised in his second PCR petition despite the opportunity to do so, the court concluded defendant had failed to establish a prima facie case of ineffectiveness entitling him to a hearing.

4

The following month, defendant filed a motion for reconsideration. In his supporting certification, defendant averred that when he appeared before the court on October 29, 2015, to argue his PCR petition, he informed the court, among other things, that he was in the process of obtaining an affidavit from a witness critical to his petition. According to him, though the judge gave him a fourteen-day extension, the witness did not get the statement notarized until December 10, 2015. Defendant claimed that once he received the notarized certification, he wrote to the Criminal Division Manager to determine the name of the judge he had appeared before. The next thing he received was the order denying his petition.

On February 17, 2016, the same judge who had denied defendant's second PCR petition entered an order that granted defendant the opportunity to seek counsel. The judge also scheduled a status conference on April 8, 2016. The court was persuaded by the notarized statement defendant attached to his motion for reconsideration that he should have been granted additional time. The court noted, "the Affidavit raises an issue of recantation by the victim." The court concluded the order with this statement: "Based on the recent Affidavit, the Court grants the defendant the opportunity to explore the issue of possible

5

recantation by the victim by permitting Defendant an opportunity to seek counsel on his application for [PCR]."

The affidavit was that of defendant's nephew, who stated:

> I, on many different occasions have been told by [defendant's son] that [V] said to him, "if you don't leave me alone, I will do to you what I did to dad," in reference to her conspiring a story to falsely accuse him of acts to lead him to imprisonment. I also requested to testify as a witness, which I was never allowed to. I have spen[t] enough time around both parties to know whoms [sic] stories are less fluid and more truthful. Throughout my childhood and adolescence, I've spen[t] countless days and nights in the household where crimes were said to have occurred and saw no suspicious behavior. I have also heard [E] while inebriated, say she was saddened and felt horrible about her father being incarcerated and that "it wasn't her idea." I would be willing to testify[,] explain and stand behind everything I have written.

Defendant obtained counsel whose investigator recorded interviews from defendant's nephew and son and supplemented the record. Amplifying his notarized affidavit, defendant's nephew explained that he was the victims' cousin. He was ten or eleven years old when his cousins made their allegations. From ages ten through fourteen, he spent time with them, staying at their home more than he stayed at his own home. As of the date he gave the statement, he still talked to them three or four times a month.

6

In his statement, defendant's nephew said that approximately two years previously he spoke to E about the allegations against defendant. He claimed E was intoxicated. He told her he knew everything that had happened and how he felt about it. The two went for a walk to get cigarettes and during the walk defendant's nephew repeatedly told E he knew defendant "didn't do it." He also said he just wanted to know "which one of you thought of doing this." According to the nephew, E was crying and just kept crying. She told him it was not her idea. He pressed, but she continued to cry and would not answer him further.

Defendant's son also gave a recorded interview. In his interview, he confirmed defendant was the family disciplinarian, whereas the children could get away with things with their mother. Defendant's son became the disciplinarian after his father was locked up. His sisters had a problem both with authority and with listening. One day he told V she had to do her homework before she could go out. V said if he didn't "calm down [his] authoritativeness, that [he] would be next." He repeated that V told him "to watch what [he] was doing, she said [he] would end up like [defendant]." Defendant's son interpreted this to mean that, like his father, he would be locked up, too.

7

Defendant's son added that after his father was locked up, "everything . . . went crazy." E and V did whatever they wanted, stayed out as late as they wanted, began getting into trouble, and did not complete high school.

Defendant's son also overheard a conversation between E and V two or three months after his father was arrested. He sensed E "was going to crack and tell the truth." He heard V tell E, "you better not say anything, and keep your mouth shut. We're good."

The court denied defendant a hearing on his PCR petition. The judge who had determined that the nephew's affidavit raised an issue of recantation by the victim did not make the final decision on defendant's motion for reconsideration. A different judge made that decision and denied the motion.

The judge who denied defendant's motion for reconsideration did so in an opinion he announced from the bench following oral argument. In rejecting defendant's arguments, he noted defendant's witnesses could "in no way, shape or form provide complete 100 percent exculpation as alleged." The judge commented that testimony from defendant's son and nephew that they observed no suspicious behavior in the home, and that E and V ran with the wrong crowd, would have been inadmissible at trial. Nor would a video showing E and V in compromising positions with older men have been admissible. The judge

determined "the statement attributed to one of the victims that they would have locked him up again does not provide the level of exculpation that warrants the [p]etitioner receiving post-conviction relief."

Concerning trial counsel not calling at trial the witnesses defendant identified in his PCR petition, the judge concluded "it would have been within . . . reasonable professional judgment not to call those witnesses as part of trial strategy, because they really do not add here. They would have been for the purposes of impeachment only."  In so concluding, the court noted:

> [T]his Defendant took the stand and testified in his own behalf and countered all the allegations that his daughters made against him. So the jury was presented with a distinct choice here whether to believe the daughters or to believe the Defendant with respect to the allegations that were here, and they chose to believe the daughter.

The court concluded, "[t]here's nothing here that indicates that the acts or omission of trial counsel were outside the wide range of professional competent assistance in light of all the circumstances."  The court found defendant had failed to demonstrate that trial counsel's performance was so deficient as to create a reasonable probability the deficiencies contributed to the conviction.

The court characterized the affidavit of defendant's nephew as well as his statement, and the statement of defendant's son as newly discovered evidence.

The court decided the affidavit from defendant's nephew did not warrant a new trial:

> This is allegedly impeaching material, and it is cumulative, the defense that the [d]efendant's actions in this case, that the allegation that the children fabricated the motive in this case was an issue before the court based on the disciplinary style of the father.
>
> Also, the second prong is the evidence was discovered after the completion of the trial. It was not discoverable by reasonable diligence before. [Defendant's] alleged evidence, some of it predates the trial; some of it does not. So that factor may go in favor of the [p]etitioner, but the [c]ourt finds that the evidence would not probably change the jury's verdict if a new trial was granted, and so that factor goes against the [p]etitioner.
>
> Again, the [c]ourt finds that most of this evidence by [defendant] is, and the son, is cumulative, impeaching and contradictory. It does not establish an alibi. It does not establish third-party guilt.
>
> Because all three prongs of the test are not satisfied, the [d]efendant is not entitled to the relief of a new trial.

Noting defendant "already had an opportunity to explain his claims in his first petition for post-conviction relief," the court commented, "a procedural bar could apply here." The court summarized its decision:

> So there is no newly discovered evidence warranting relief, [defendant] has not established that he's entitled to relief under the Strickland v. Washington standard,

even assuming that the petition can go forward, and, lastly, the case should be procedurally barred because of time. So any one of those three is sufficient basis to deny the request for an evidentiary hearing or for PCR relief.

The court entered a memorializing order and this appeal followed.

## II.

On appeal, defendant argues:

POINT I
THE PROCEDURAL BAR SHOULD BE EXCUSED DUE TO INEFFECTIVE ASSISTANCE OF PCR AND APPELLATE COUNSEL.

POINT II
BECAUSE DEFENSE COUNSEL FAILED TO ADEQUATELY INVESTIGATE THE CASE, DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

POINT III
DEFENDANT IS ENTITLED TO A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE.

POINT IV
AS THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE, AN EVIDENTIARY HEARING WAS REQUIRED.

### A.

We are unpersuaded by defendant's first two arguments. In his first argument point heading, defendant asserts "the procedural bar" should be excused, but he does not identify the specific procedural bar, either in the point

11

heading or in his argument. A second or subsequent PCR petition must be filed within one year of the occurrence of specified events. R. 3:22-12(a)(2). The event that appears to apply here is "the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief is being alleged." R. 3:22-12(a)(2)(C). Defendant alleges that his first PCR counsel as well as the attorney who filed his appeal were ineffective, but the appeal was decided on May 20, 2014, and defendant filed his second PCR petition on June 2, 2015.

Defendant is out of time. R. 3:22-12(b) ("These time limits shall not be relaxed, except as provided herein."). Defendant does not identify any exception "provided herein."

In his second point, in which he elaborates on his first point, defendant identifies three witnesses he claims would have provided exculpatory testimony. He also claims he gave their names to trial counsel, who neither interviewed them, requested that they testify, or presented their testimony at defendant's trial. But defendant has not produced certifications from the witnesses explaining what they knew. These witnesses are not defendant's nephew or son, who provided statements.

12

In order to establish the two elements of an ineffective assistance claim that are required by <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984) and <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987) (adopting the <u>Strickland</u> two-part test in New Jersey), a defendant must do more than make bald assertions that he was denied effective assistance of counsel; he must allege specific facts sufficient to demonstrate counsel's alleged substandard performance. <u>State v. Cummings</u>, 321 N.J. Super. 154, 170 (App. Div. 1999). Thus, "when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." <u>Ibid.</u> Here, defendant has failed to provide such certifications or affidavits. For that reason, his argument is unavailing.

Because defendant has failed to present a prima facie case of ineffective assistance of counsel, we reject his argument in Point IV that he was entitled to an evidentiary hearing on these claims.

## B.

We next address defendant's third argument that newly discovered evidence warrants a new trial. Defendant bases his argument on the statements

13

of his son and nephew. Settled principles inform our analysis of defendant's arguments:

> To meet the standard for a new trial based on newly discovered evidence, defendant must show that the evidence is 1) material, and not "merely" cumulative, impeaching, or contradictory; 2) that the evidence was discovered after completion of the trial and was 'not discoverable by reasonable diligence beforehand'; and 3) that the evidence "would probably change the jury's verdict if a new trial were granted."
>
> [State v. Ways, 180 N.J. 171, 187 (2004) (quoting State v. Carter, 85 N.J. 300, 314 (1981)).]

Under the first of the three criteria, a defendant must show the evidence "ha[s] some bearing on the claims being advanced." Id. at 188 (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997)). Thus, a court must evaluate "the probable impact such evidence would have on a jury verdict." Id. at 188-89. Under the second criteria, "the new evidence must have been discovered after completion of trial and must not have been discoverable earlier through the exercise of reasonable diligence." Id. at 192. A defendant must "act with reasonable dispatch in searching for evidence before the start of the trial." Ibid. Under the third criteria, a defendant must show the evidence "would probably change the jury's verdict if a new trial were granted." Id. at 189 (quoting Carter, 85 N.J. at 314). "The power of the newly discovered evidence

14

to alter the verdict is the central issue . . . ." Id. at 191. "[T]he test is whether the evidence if introduced is such as ought to have led the jury to a different conclusion—one of probability and not mere possibility[.]" State v. Haines, 20 N.J. 438, 445 (1956).

Motions for a new trial based on newly discovered evidence are "not favored and should be granted with caution by a trial court since [they] disrupt[] the judicial process." State v. Conway, 193 N.J. Super. 133, 171 (App. Div. 1984) (citing Haines, 20 N.J. at 443). Such motions are "addressed to the sound discretion of the trial court, and its determination will not be reversed on appeal unless there has been a clear abuse of that discretion." State v. Puchalski, 45 N.J. 97, 107 (1965) (quoting State v. Artis, 36 N.J. 538, 541 (1962)); accord, State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000). From our review of the record in the case before us, we cannot conclude the trial court abused its discretion by denying defendant's motion. Although defendant's son does not specify precisely when his sisters made the statements he attributes to them, they appear to have been made shortly after defendant was arrested and before his trial. Defendant has provided no explanation as to why he disclosed them for the first time after filing his second PCR petition, or why the evidence was not available before the start of his trial. Concerning the statements made by

A-3030-17T4

defendant's nephew, it is unclear why defendant could not have provided the information before filing his first PCR petition.

More significantly, defendant's nephew's statements consist mostly of hearsay, and the statement he attributes to E is ambiguous at best. Although one could draw an inference that E's statement, while she was upset, that it was not her idea, referred to the victims making up their accusations, the statement could also suggest that it was not E's idea to disclose the sexual abuse perpetrated by defendant.

The conversation between E and V, overhead by defendant's son, is similarly ambiguous. Moreover, failure by defendant and his son to explain the reason the son did not disclose V's statements before trial or when defendant filed his first PCR petition validates the principle that granting a new trial based on such tenuous allegations is not a favored course of action and should be approached with caution.

In short, we cannot conclude "the evidence if introduced is such as ought to have led the jury to a different conclusion—one of probability and not mere possibility. . . ." Haines, 20 N.J. at 445. Stated differently, the trial court did not clearly abuse its discretion in denying defendant's motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-3030-17T4